**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 8 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

YOLANDA TORRES-GUEVARA,

Defendant-Appellant.

No. 97-4115

Appeal from the United States District Court
for the District of Utah
(D.C. No. 96-CR-127 B)

R. Steven Chambers, Salt Lake City, Utah, for Defendant-Appellant.

Richard D. McKelvie, Assistant United States Attorney, Salt Lake City, Utah, for
Plaintiff-Appellee.

Before **ANDERSON,** **MAGILL,**[*] and **KELLY,** Circuit Judges.

**MAGILL,** Circuit Judge.

---

[*]Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals
for the Eighth Circuit, sitting by designation.

Yolanda Torres-Guevara entered a conditional guilty plea to possession of cocaine with intent to distribute. Torres-Guevara appeals the district court's order denying her motion to suppress statements and evidence obtained during her encounter with drug enforcement agents at the Salt Lake International Airport. Torres-Guevara argues that she was the subject of an unlawful seizure, in violation of the Fourth Amendment, and that the police failed to advise her of her Miranda[1] rights before interrogating her, in violation of the Fifth Amendment. Because we find that the encounter remained consensual until she admitted possessing drugs, we affirm.

## I.

On June 20, 1996, Detective Michael Judd, Sergeant Mark Whittaker, and Special Agent John Eddington, members of a Drug Enforcement Agency (DEA) Task Force, were working a narcotics interdiction detail at the airport. As members of the detail, officers Judd, Whittaker, and Eddington were responsible for meeting flights arriving from drug source cities, such as Los Angeles, California, and watching disembarking passengers for abnormal behavior indicative of drug-courier activity.

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

That same afternoon, Torres-Guevara arrived at the Salt Lake International Airport on a flight from Los Angeles. Officers Judd, Whittaker, and Eddington watched Torres-Guevara and the other passengers disembark. Torres-Guevara exited, wearing a long, sleeveless, baggy sweatshirt over her T-shirt, and carrying only her purse. She walked quickly through the airport toward the exit, keeping her head down, avoiding eye contact, and holding her hands against her stomach. She did not stop for luggage. At all times, she "rest[ed] her hands on her stomach area [and] appeared as if she was holding something in place." Suppression Hrg. Tr. at 12 (testimony of Detective Judd).

Once outside the airport, Miguel Garcia, who had also been a passenger on Torres-Guevara's flight from Los Angeles, joined her and started a conversation. Though Garcia was a copassenger on Torres-Guevara's flight, he had disembarked before Torres-Guevara and had not walked with her through the airport. While she and Garcia talked, they walked past the taxi pickup area toward the curb of the main road, where cars pick up arriving passengers. They then proceeded to walk on the sidewalk along the curb.

Finding all of this behavior suspicious, Detective Judd approached Torres-Guevara and Garcia and, speaking English, identified himself as a police officer and showed them his DEA credentials. When Torres-Guevara and Garcia did not respond, Judd asked them, in Spanish, whether they spoke Spanish. After

-3-

learning that they spoke and understood Spanish, Detective Judd conducted the conversation in Spanish.

Without blocking either Torres-Guevara or Garcia from continuing their walk along the curb, Detective Judd advised them that they were free to leave, and then asked them if he could speak to them for a minute.[2] Both agreed. Detective Judd again asked whether they understood that they were not under arrest and that they were free to go. Both replied in the affirmative.

Detective Judd proceeded to ask them for identification. Each produced California identification. Special Agent Eddington joined Detective Judd at this time, and Torres-Guevara gave her identification to Eddington, while Garcia gave his identification to Judd. After returning the identifications, Judd asked to see their airline tickets. Garcia's ticket was a one-way ticket from Los Angeles. Her's was a round-trip ticket scheduled to leave Salt Lake City within two hours.

After returning the tickets, Judd asked them whether they were carrying drugs or large amounts of cash. Garcia responded "no," but she did not respond. Id. at 19. Judd then asked her whether she understood his question, but she avoided eye contact and did not respond.

_____

[2]Judd spoke to Torres-Guevara in Spanish throughout the remainder of the encounter.

Judd next asked for permission to search their persons. Garcia promptly consented. While searching Garcia, Judd again informed him that he was not under arrest and Garcia acknowledged that he understood. Judd did not find anything and thanked Garcia for consenting to the search. Garcia then started walking away, and Judd waved him on. While Garcia was leaving, Judd again asked for permission to search Torres-Guevara. When she did not respond, Judd asked her whether she understood his question. She again did not respond. Judd then told her that if she had drugs, she should turn them over to him. Sergeant Whittaker then joined officers Judd and Eddington, and, in Spanish, asked Torres-Guevara: "you have drugs, don't you[?]" Id. at 23. When she put her head down instead of answering, he asked: "don't you[?]" Id. This time she responded: "yes." Id.

After Torres-Guevara admitted having drugs, Whittaker asked: "it's under your shirt, isn't it[?]" Id. Torres-Guevara nodded her head, and Whittaker reached out with the back of his hand and touched the front of her shirt and felt something hard. A female officer was then contacted to search her, and Whittaker placed her under arrest and escorted her to the airport office. While walking to the office, and before she had been given a Miranda warning, she started to cry and said that "this was my first time." Id. at 24. After reaching the office, and still before giving her a Miranda warning, Whittaker asked her if the drugs were in her

stomach area. Rather than answering, she pulled out two kilogram-size packages of cocaine from under her shirt and placed them on a table in front of her.

The government charged her in a one-count indictment for possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a) (1994). Prior to trial, she filed a motion to suppress the drugs and her incriminating statements. She argued that the drugs and her statements were obtained pursuant to an unlawful search and seizure, and also that her statements were obtained in violation of the Fifth Amendment because the officers had failed to give her a Miranda warning. The magistrate judge determined that Torres-Guevara's encounter with the three officers remained consensual until she admitted having drugs and, therefore, that she was not entitled to a Miranda warning prior to the admission. The magistrate judge also found that her statement that "this was my first time" was made without any interrogation and was also not subject to Miranda. Finally, the magistrate judge held that the drugs were obtained pursuant to a lawful search incident to arrest. The district court agreed, adopting the magistrate judge's report and recommendation. Torres-Guevara subsequently entered a guilty plea conditioned on her ability to appeal the denial of her motion to suppress. She now appeals.

## II.

Torres-Guevara argues that the drugs and her incriminating statements should have been suppressed because she was the subject of an illegal search and seizure. We disagree.

When reviewing a district court's denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous, and view the evidence in the light most favorable to the government. See United States v. Glass, 128 F.3d 1398, 1405 (10th Cir. 1997). However, "[w]e review de novo the district court's conclusion of law whether a seizure occurred." Id.

This court has previously

"identified three categories of police-citizen encounters: (1) consensual encounters which do not implicate the Fourth Amendment[;] (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity[;] and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause."

United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir. 1996) (quotations omitted). Torres-Guevara agrees that her encounter with Judd commenced as a consensual encounter. See Appellant's Br. at 10. She contends, however, that the encounter escalated to a seizure at some point in time after Garcia left and before she admitted to Whittaker that she was carrying drugs. She argues that any reasonable person subjected to Judd's repeated requests to search her, in conjunction with Whittaker's questioning, would not have felt free to leave.

An encounter is consensual if the defendant "is free to leave at any time during the encounter." United States v. Hernandez, 93 F.3d 1493, 1498 (10th Cir. 1996). "A person is seized only when that person has an objective reason to believe he or she is not free to end the conversation with the officer and proceed on his or her way." Id. (emphasis added). The defendant's subjective belief that she was not free to leave is not determinative. "The correct test is whether a reasonable person in [the defendant's] position would believe [she] was not free to leave." Id. at 1499.

We review all of the circumstances surrounding an encounter to determine whether it constitutes a seizure or a consensual encounter. See United States v. Little, 18 F.3d 1499, 1503 (10th Cir. 1994) (en banc) (Little I); see also Glass, 128 F.3d at 1406 (analyzing encounter "under a totality of the circumstances test"). Relevant circumstances include, but are not limited to, whether:

> "[T]he encounter occurred in a confined or nonpublic space; the officers confronting the subject were armed or uniformed; more than one officer confronted the subject; the officers exhibited an intimidating or coercive demeanor; and the officers asked the subject potentially incriminating questions."

Glass, 128 F.3d at 1406 (citations omitted). Additional circumstances include whether the officers advised the defendant that she did not need to cooperate, see Little I, 18 F.3d at 1505, and that she was free to leave. See United States v.

Griffin, 7 F.3d 1512, 1518 (10th Cir. 1993). However, none of these factors, by itself, is dispositive. See Glass, 128 F.3d at 1406.

Here, the encounter occurred on a public curbside and the officers never surrounded or otherwise restrained Torres-Guevara from walking away. The officers were not wearing uniforms and did not brandish their weapons or otherwise threaten her. The officers promptly returned her airline ticket and identification to her after examining them. See id. (finding that "none of the usual factors indicating a person has been seized exist" where encounter occurred on a public sidewalk by a passenger loading zone, the officers were not uniformed and did not display their weapons, and the officers promptly returned the defendant's ticket and identification after examining them); compare United States v. Waksal, 709 F.2d 653, 660 (11th Cir. 1983) (failure of police to return airline ticket and license to defendant was critical to determination that a seizure occurred). The officers informed her on two separate occasions that she was not under arrest and that she was free to leave. Compare Griffin, 7 F.3d at 1519 (finding that a seizure occurred where the defendant was taken "to a small private office within a police-controlled area of the airport" and "was not told that she could refuse to answer the officer's questions or terminate the interview at any time and leave"). The officers never moved, touched, physically restrained, or otherwise prevented her from leaving or continuing along the curbside. See

Waksal, 709 F.2d at 659 (whether the police physically blocked the defendant's path is significant factor in determining whether seizure occurred). Accordingly, "none of the usual factors indicating a person has been seized exist in this case." Glass, 128 F.3d at 1406.

Torres-Guevara contends that the encounter escalated into a seizure because Judd asked her twice to consent to a search and Whittaker asked her twice whether she carried drugs. We disagree. "A limited number of routine questions . . . followed by a question about possession of contraband and a request to search, are not sufficient to render an otherwise consensual encounter coercive." Hernandez, 93 F.3d at 1499. Indeed, we recently found an encounter to be consensual even where officers subjected the defendant to a particularly focused inquiry. See Glass, 128 F.3d at 1406-07 (refusing to adopt a per se rule that "asking directly incriminating and focused questions" transforms a consensual encounter into a detention). Although "accusatory, persistent, and intrusive questioning may turn an otherwise voluntary encounter into a coercive one," Hernandez, 93 F.3d at 1499 (quotations and citation omitted), this is true only if the officers "convey[] the message that compliance is required." Id. As described above, the officers did nothing to indicate to Torres-Guevara that she was required to agree to be searched or to answer Whittaker's questions. "There was no evidence that [the officers] used a commanding or threatening manner or tone

-10-

of voice, displayed a weapon, or touched [her]." Id. Viewing the facts in the light most favorable to the government, therefore, we find that a reasonable person in Torres-Guevara's position would have believed that she was free to leave in lieu of responding to officers Judd and Whittaker.

Torres-Guevara also contends that, because Garcia left only after agreeing to be searched and after Judd waved him on, she did not feel free to leave without also agreeing to be searched. Her argument rests primarily on the fact that Judd failed to inform her for a third time that she was free to leave. While Garcia's decision to leave only after being searched may have led Torres-Guevara to have a subjective belief that she was not free to leave without also being searched, her subjective belief is not determinative. See id. As noted above, Judd specifically advised her--twice--that she was free to leave. The officers did nothing to suggest to her that she was required to cooperate. They did not separate her from Garcia and place in her in police confinement to interrogate her, and they did not surround or otherwise prevent her from leaving; rather, they allowed Garcia to leave in accordance with their earlier advisement that they were both free to leave. Compare Griffin, 7 F.3d at 1519 (finding that defendant was in custody when police separated her from her friend, took her from an open area to a small police-restricted room, and then questioned her without advising her that she could leave); United States v. Bloom, 975 F.2d 1447, 1455-56 (10th Cir. 1992)

(encounter becomes a seizure when officer questions subject in confined quarters). While Judd's failure to specifically advise Torres-Guevara for a third time that she need not consent is relevant to the court's ultimate inquiry, see United States v. Little, 60 F.3d 708, 713 (10th Cir. 1995) (Little II), it is not dispositive. The fact that Garcia consented to a search and then left the scene did not change the encounter into a seizure. Based on the totality of the circumstances, we find that the encounter remained consensual until Torres-Guevara admitted that she possessed drugs, at which time probable cause existed for her arrest.[3]

### III.

Torres-Guevara also argues that her statements to Whittaker that she carried drugs and that it was the first time that she carried drugs should have been suppressed because the officers failed to give her any Miranda warnings. We disagree.

---

[3]In their briefs, the parties also addressed the issue of whether the encounter escalated into a Terry stop after Garcia's departure and, if so, whether the police had reasonable suspicion to detain Torres-Guevara. See Terry v. Ohio, 392 U.S. 1 (1968). While we conclude that the encounter remained consensual until Torres-Guevara admitted carrying drugs, we agree with the government that a Terry stop would have been justified in the circumstances of this case.

Miranda warnings are required only when a suspect is in custody. See United States v. Perdue, 8 F.3d 1455, 1463 (10th Cir. 1993). The determination of whether a defendant is in custody for purposes of Miranda is based on the totality of the circumstances, and we review the district court's determination that Torres-Guevara was not in custody de novo. See United States v. Erving L., No. 97-2256, 1998 WL 340017, at *5 (10th Cir. June 26, 1998).

In this case, Torres-Guevara's encounter with the officers was consensual at the time she admitted carrying drugs. Accordingly, she was not in custody and was not entitled to Miranda warnings prior to her admission. See Griffin, 7 F.3d at 1516.[4] Her later statement that "this was my first time" was made spontaneously to Whittaker. Because the statement was volunteered, rather than given in response to any interrogation, this statement also was admissible in the absence of Miranda warnings. See United States v. Muniz, 1 F.3d 1018, 1022 (10th Cir. 1993) ("If a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible.").

**IV.**

---

[4]This result would also be true even if the encounter constituted a Terry stop. See United States v. Griffin, 7 F.3d 1512, 1516 (10th Cir. 1993) (Miranda warning typically not required during Terry stop).

Torres-Guevara further contends that the drugs she produced to Whittaker should have been suppressed as fruits of an unlawful arrest.  Because we have found that she was not arrested until after she admitted carrying drugs, and because Torres-Guevara concedes that this admission provided probable cause for her arrest, this argument necessarily fails and does not warrant further discussion.

For the foregoing reasons, we **AFFIRM** the district court in all respects.