**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 6 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SERGIO GANDARILLA-ESTRADA,
also known as Jose Luis Villarael-
Castro,

Defendant - Appellant.

No. 98-1001
(D. Ct. No. 97-CR-180-D)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **BRORBY**, and **KELLY**, Circuit Judges.

---

Pursuant to Federal Rule of Criminal Procedure 11(a)(2), defendant Sergio

Gandarilla-Estrada entered a conditional guilty plea to re-entering the country in

violation of 8 U.S.C. § 1326(a) and (b)(2). This statute makes it illegal to re-

enter the United States after having previously been deported subsequent to

conviction for an aggravated felony without the express consent of the Attorney

General. Having properly preserved his right below, defendant appeals the

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

district court's order denying his Motion to Suppress Statements and Evidence. Defendant argues that the district court committed reversible error in denying his motion to suppress because the pertinent statements and evidence resulted from a seizure unsupported by either reasonable suspicion or probable cause. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

In the Spring of 1997, a number of train robberies occurred in the Denver metropolitan area, at or near Commerce City, Colorado. Commerce City Police Department officials investigating these crimes received a tip from a confidential informant that several Mexican nationals living at a house on 80th Avenue in Commerce City had participated in the train robberies. The informant also told the officers that several occupants of the 80th Avenue house were illegally within the United States. Sometime thereafter, the informant provided the officers with train shipping labels from the 80th Avenue residence that corresponded with items stolen from the trains. Throughout the investigation, the informant provided reliable information about the alleged train robbers' activities.

On April 9, 1997, the informant notified the police that the suspected train robbers and their leader, an individual known as "Apache," would arrive at the 80th Avenue property at a particular time on April 10, 1997, in a red and white sports utility vehicle ("SUV"). Furthermore, she stated that illegal aliens would flee from the house if they detected police.

Acting on this information, law enforcement officials from the Commerce City Police Department and the Immigration and Naturalization Service ("INS") put the 80th Avenue residence under surveillance on April 10, 1997. At the time reported, the red and white SUV arrived at the house. Less than a minute later, law enforcement officers approached the house in four to six vehicles. At this point, two Hispanic males fled from the residence. Although ordered to stop, the men continued to flee in different directions, one running north. Police chased the two men, but eventually lost the individual running north in a large field behind the 80th Avenue house.

As these events occurred, Corporal Steve Drake of the Commerce City Police Department sat in his patrol car about two blocks from the scene of the chase. Corporal Drake had attended the morning briefing regarding the raid of the 80th Avenue house. He had also heard the radio broadcast concerning the chase, which included the direction in which the suspects had fled and a description of the men. Approximately ten minutes later, Corporal Drake observed Mr. Gandarilla-Estrada casually walk in front of his marked patrol car from the field behind the 80th Avenue house. Mr. Gandarilla-Estrada proceeded to cross the street. Because Mr. Gandarilla-Estrada matched the description of one of the fleeing suspects, Corporal Drake called him back and requested identification. He then asked him from where he was coming. Mr. Gandarilla-

Estrada stated that he had just come from a flea market and pointed west. Corporal Drake testified that the nearest flea market was closed that day and was to the north and that the nearest flea market in the direction the defendant had pointed was seven to ten miles away. As a safety precaution, Corporal Drake patted down the defendant and placed him in handcuffs. At this point, another officer, Sergeant Detective Larry Woog, arrived and identified the defendant as one of the individuals who had fled from the 80th Avenue house.

After Mr. Gandarilla-Estrada was identified as a suspect, Corporal Drake placed him in a patrol car and took him back to the 80th Avenue residence where INS agents questioned him in Spanish as to his alienage pursuant to 8 U.S.C. § 1357(a)(1) and (a)(2). Upon questioning, the defendant gave an alias and admitted that he was an illegal alien. Subsequently, INS agents booked and fingerprinted him at an INS facility. The fingerprints revealed the defendant's true identity, his criminal record, and prior deportation.

On April 18, 1997, the defendant received his Miranda warning in Spanish. Mr. Gandarilla-Estrada subsequently waived his right to remain silent and executed a sworn statement stating that he had been deported from the country and had re-entered without the express permission of the Attorney General. Defendant was indicted for re-entering the country in violation of 8 U.S.C. § 1326(a) and (b)(2).

Defendant filed a Motion to Suppress Statements and Evidence in which he asked the district court to suppress, under the exclusionary rule of the Fourth Amendment, any evidence and admissions regarding his illegal entry and presence in the United States, the fingerprint evidence, and any evidence derived from his fingerprints – for example, his true identity, criminal history, and prior deportation. After a two-day suppression hearing, the district court denied defendant's motion, concluding that Corporal Drake executed a proper <u>Terry</u> stop because he "had a reasonable and articulable suspicion to stop Defendant, and the detention of Defendant was not for an inordinate time." Dist. Ct. Order at 4. Consequently, the court found that because no Fourth Amendment violation had occurred, the defendant's subsequent arrest was lawful. After the district court denied his motion to suppress, defendant entered a conditional guilty plea, reserving his right to appeal the district court's denial of his motion to suppress. On December 19, 1997, the court sentenced Mr. Gandarilla-Estrada to 64 months imprisonment followed by a three-year term of supervised release. This appeal followed.

When reviewing a district court's denial of a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous. <u>See</u> <u>United States v. Gama-Bastidas</u>, 142 F.3d 1233, 1237 (10th Cir. 1998). Furthermore, "we consider the totality of the circumstances and view the evidence in a light

most favorable to the government." United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998). However, the ultimate determination of whether a search or seizure was reasonable under the Fourth Amendment is a question of law that we review de novo. See id.

This court has identified three categories of police-citizen encounters, each of which triggers a different standard of reasonableness under the Fourth Amendment. First, there are consensual encounters that are entirely outside the scope of the Fourth Amendment. See United States v. Torres-Guevara, 147 F.3d 1261, 1264 (10th Cir. 1998). Second, there are investigative detentions, otherwise known as Terry stops, which "'are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity.'" Id. (quoting United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir. 1996)). Lastly, there are custodial arrests that are reasonable under the Fourth Amendment only if supported by probable cause. See id.

"An encounter is consensual if the defendant 'is free to leave at any time during the encounter.'" Id. (quoting United States v. Hernandez, 93 F.3d 1493, 1498 (10th Cir. 1996)). Only when a person "'has an *objective reason* to believe that he or she is not free to end the conversation with the officer and proceed on his or her way'" does the encounter become a seizure. Id. (emphasis in original). After a seizure occurs, the next question is whether it constitutes a Terry stop or a

custodial arrest.

"Terry stops must be limited in scope to the justification for the stop." United States v. Perdue 8 F.3d 1455, 1462 (10th Cir. 1993). Thus, the officer may question the detainee during the stop in order to dispel or confirm his or her suspicions, but any further detention is elevated to an arrest, unless there is consent. See United States v. Brignoni-Ponce, 422 U.S. 873, 881-82 (1975); Perdue, 8 F.3d at 1462. Although this inquiry focuses on the length and intrusiveness of the seizure, it also considers the safety interests of law enforcement officials. Consequently, "intrusive precautionary measures do not necessarily turn a lawful Terry stop into an arrest under the Fourth Amendment." Perdue, 8 F.3d at 1463. Because law enforcement officials "should not be required to take unnecessary risks in performing their duties, they 'are authorized to take such steps as [are] reasonably necessary to protect their personal safety and maintain the status quo during the course of [a Terry] stop." Id. at 1462 (quoting United States v. Hensley, 469 U.S. 221, 235 (1985)) (alterations in original). For example, this court has held that law enforcement officials "may draw guns and use handcuffs during a Terry stop" when they reasonably believe such steps are necessary to protect themselves. United States v. Edwards, 103 F.3d 90, 93 (10th Cir. 1996).

We find that Corporal Drake's encounter with Mr. Gandarilla-Estrada prior

to placing him in the patrol car was, at most, a <u>Terry</u> stop.  The record indicates that, during this period, Mr. Gandarilla-Estrada was detained for no more than a few minutes.  The officer only handcuffed and patted him down as a precautionary matter, and this occurred just moments before Sergeant Woog identified him as one of the fleeing suspects.  Furthermore, Corporal Drake's questioning was reasonably related to his justifications for the stop – whether the defendant was the individual who had run from the officers at the 80th Avenue residence.

As a <u>Terry</u> stop, this initial encounter will satisfy the reasonableness requirement of the Fourth Amendment only if it was based, at its inception, on an objectively reasonable and articulable suspicion that the person seized has or is engaged in criminal activity.  <u>See</u> <u>United States v. Soto-Cervantes</u>, 138 F.3d 1319, 1322 (10th Cir. 1998); <u>United States v. Alarcon-Gonzalez</u>, 73 F.3d 289, 293 (10th Cir. 1996).  "Whether . . . an investigative detention is supported by an objectively reasonable suspicion of illegal activity does not depend on any one factor but on the totality of the circumstances."  <u>United States v. Soto</u>, 988 F.2d 1548, 1555 (10th Cir. 1993).   Nonetheless, to support a finding of reasonable suspicion, an officer must be able to point to specific and articulable facts, rather than a mere "hunch."  <u>See</u> <u>Soto-Cervantes</u>, 138 F.3d at 1322.

Based upon our review of the record, we agree with the district court that

Corporal Drake's initial stop of Mr. Gandarilla-Estrada was supported by reasonable suspicion. The record reveals that Corporal Drake had ample facts to establish an objectively reasonable and articulable suspicion. First, the confidential informant had provided reliable information to the police that some occupants of the 80th Avenue house had committed train robberies and that some were illegal aliens. Corporal Drake would have been familiar with this information, having attended a briefing regarding the planned raid the morning that it occurred. Second, Corporal Drake had listened to the police broadcast regarding the two fleeing men, including a description of the men and where they had fled. Although defendant argues that flight cannot alone provide support for probable cause, it may appropriately be considered as one factor in the determination of whether the totality of the circumstances supports a finding of probable cause or reasonable suspicion. See United States v. Silva, 957 F.2d 157, 160 (5th Cir. 1992); United States v. Haye, 825 F.2d 32, 34-35 (4th Cir. 1987); United States v. Pope, 561 F.2d 663, 668 (6th Cir. 1977). Third, within approximately ten minutes of the raid, Corporal Drake spotted the defendant, who matched the description of one of the fleeing men, in close proximity to where the chase had ended. These facts establish that Corporal Drake had an objectively reasonable and articulable suspicion which justified a Terry stop of the defendant. This conclusion is bolstered by the defendant's arguably consensual response to

Corporal Drake's initial questions, which strongly suggested he was lying about his previous whereabouts. Thus, we find that under the totality of the circumstances, Mr. Gandarilla-Estrada's initial detention was supported by reasonable suspicion.

However, Corporal Drake exceeded the bounds of the Terry stop and effected a full-fledged custodial arrest when he placed Mr. Gandarilla-Estrada in the patrol car and transported him back to the 80th Avenue residence. To be reasonable under the Fourth Amendment, this warrantless arrest must be based on probable cause. See Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1256 (10th Cir. 1998). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has *reasonably trustworthy* information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Id. (internal quotations and citations omitted).

Defendant argues that no probable cause existed at the point of his arrest. We disagree. In addition to the facts outlined above, prior to placing the defendant under arrest, Sergeant Woog identified him as one of the men who had fled from the 80th Avenue house. It is settled law in this circuit that "[o]fficers may rely on information furnished by other law enforcement officials to establish reasonable suspicion . . . and to develop probable cause for an arrest." Albright

v. Rodriguez, 51 F.3d 1531, 1536 (10th Cir. 1995) (citations omitted).  We find that the incremental additional evidence of Sergeant Woog's identification of Mr. Gandarilla-Estrada as the fleeing suspect coupled with Corporal Drake's knowledge gained from the raid briefing and Mr. Gandarilla-Estrada's implausible response to questioning about his former whereabouts provided a sufficient basis for Corporal Drake to find that probable cause existed.  Accordingly, we conclude that Corporal Drake's arrest of the defendant at the time the officer placed him in the patrol car was based on probable cause and was therefore reasonable under the Fourth Amendment.

For the above reasons, the district court was correct to deny the defendant's Motion to Suppress Statements and Evidence.  AFFIRMED.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge