**UNITED STATES of America, Plaintiff,**

v.

**Cornell Deon MITCHELL, Defendant.**

**No. 2:01–CR–179B.**

United States District Court, D. Utah, Central Division.

March 26, 2002.

Wendy M Lewis, Utah Fed. Defender Office, Salt Lake City, UT, for Cornell Deon Mitchell.

Leshia M. Lee-Dixon, U.S. Attorney's Office, Salt Lake City, UT, for U.S.

## MEMORANDUM OPINION
## AND ORDER

BENSON, Chief Judge.

Before the Court is defendant Cornell Deon Mitchell's motion to suppress evidence seized as a result of the search of his person and jacket on March 8, 2001. Specifically, defendant argues that his Fourth Amendment rights were violated because the officer did not have an articulable and reasonable suspicion to perform the search. Additionally, defendant argues that the incriminating statements made by defendant during and after the pat-down search should be suppressed as fruit of the illegal search.

Having considered the parties' briefs, the evidence presented at the suppression hearings, and the relevant law, the Court issues the following Memorandum Opinion and Order.

## BACKGROUND

At the suppression hearing, Officer Richard Brede testified he was an employee of the Salt Lake City Police Department in March of 2001. At that time, Officer Brede had worked for the Department for seven years and was a patrol officer on the east side of Salt Lake City. As such, Officer Brede was familiar with the area of 1435 South State Street—an area he knew to be frequented by prostitutes, drug users and drug dealers. (TR.1 pp. 4–6).[1] Officer Brede testified he had been to this area at least once a day during his tour of duty, and due to the known use of drugs and firearms in the area, he was concerned for his safety. (TR.1 p. 6). Furthermore, Officer Brede testified that during his training he had

been instructed to use particular caution in this area due to a high frequency of drug usage and sales. (TR.2 pp. 8–9).

Officer Brede testified that on March 8, 2001, he was called to investigate a shoplifting incident at Evolution Ski Company, a business located at 1435 South State Street. Shortly after arriving at the crime scene, Officer Brede observed two male individuals standing outside the store. One male appeared to be white or Hispanic; the other black. (TR.1 p. 7). Officer Brede observed the two men, noting that the black man—defendant herein—was carrying ski pants. (TR.1 p. 9). Officer Brede approached the two men and asked "if they were involved with the call of the reported shoplift" at the store, to which the white man answered affirmatively. (TR.1 p. 7). Officer Brede testified that the white man identified himself as the store manager and told Officer Brede that defendant was holding stolen pants. Officer Brede testified that at that time, he viewed defendant as the suspect of the shoplifting crime. (TR.2 p. 7). Accordingly, Officer Brede asked the manager and defendant to move inside the store for further questioning.

As the three men entered the store, Officer Brede observed that defendant was holding a jacket in one hand and a pair of ski pants in the other hand. The jacket was draped across defendant's left arm. When the men reached the store counter, defendant put the jacket on the floor and placed the ski pants on the counter. The jacket rested directly at defendant's feet. (TR.1 pp. 8–9).

Before questioning defendant about his involvement with the shoplift, Officer Brede testified he was concerned that defendant might have a weapon of some kind

---

1. "TR.1" denotes the suppression hearing held on October 25, 2001. "TR.2" denotes the suppression hearing held on March 12, 2002.

and wanted to ensure he did not before further questioning him. (TR.1 p. 9). Furthermore, Officer Brede testified that he felt he needed to ensure his safety because defendant was "now a suspect in a crime and he [was] in this area where dealings with people have sometimes included the carrying of weapons." (TR.2 p. 10). Accordingly, Officer Brede wanted to perform a pat-down search of defendant and his jacket. Officer Brede stated that the sole purpose of the search was to ensure his safety during the investigation. (TR.2 p. 11).

Officer Brede then conducted a pat down search of defendant, finding nothing on his person. (TR.2 p. 12). Officer Brede then placed his hand on the collar of the jacket to pick it up. As Officer Brede lifted the jacket to perform the search, defendant preemptively stated that a pistol was in the jacket. Officer Brede finished the pat-down search of the jacket and found a pistol in the pocket and a magazine with five rounds inside. Officer Brede then handcuffed defendant. (TR.1 p. 10).

At the time defendant made the statement regarding the location of the pistol, he was not under arrest and Officer Brede had not asked him any questions. (TR.1 p. 10). After defendant was handcuffed, Officer Brede questioned the store manager and defendant about the shoplifting incident; Officer Brede did not ask defendant any questions concerning the gun. (TR.1 pp. 10–11). Nevertheless, defendant stated that he used the firearm for protection. Officer Brede's interaction with defendant lasted no more than ten minutes in its entirety.

Based on the above evidence the Court enters the following:

## FINDINGS OF FACT

1. On March 8, 2001, Officer Brede of the Salt Lake City Police Department was dispatched to Evolution Ski Company, located at 1435 South State Street, to investigate a shoplifting incident. Officer Brede was familiar with the store's location and had patrolled the immediate area every day while assigned to work in east Salt Lake City. Officer Brede knew that the area was dangerous and was regularly frequented by prostitutes, drug dealers and drug users.

2. Upon arriving at the store, Officer Brede observed two men—one white or Hispanic, the other black—waiting outside. Officer Brede approached the men and asked if they were involved with the call of the reported shoplifting at that address. The white or Hispanic man identified himself as the manager of the store and answered affirmatively. The manager also told Officer Brede that the black man—defendant herein—was holding stolen pants.

3. At that point, Officer Brede reasonably believed defendant was the suspect in the shoplifting incident.

4. Officer Brede reasonably believed he needed to further question defendant as the suspect of the shoplifting incident. Accordingly, Officer Brede asked defendant and the store manager to enter the store.

5. When entering the store, defendant had a jacket in his left hand and the unmarked ski pants in his right hand. Upon reaching the sales counter, defendant dropped the jacket at his feet and placed the pants on the counter.

6. Officer Brede knew both from training and personal experience that the area where the shoplifting occurred was a high-crime area. The officer also knew that in that area of the city, persons often carried weapons.

7. Officer Brede was reasonably concerned for his safety and therefore, began

a pat-down search of defendant. Officer Brede did not find any weapons on defendant's person.

8. Officer Brede then picked up defendant's jacket to finish the pat-down search. When Officer Brede began to lift the jacket, defendant preemptively stated that there was a gun inside the jacket. Officer Brede finished searching the jacket, finding a pistol in the pocket and a magazine with five rounds inside. Officer Brede then handcuffed defendant.

9. At no time did Officer Brede question defendant about the pistol. Nevertheless, defendant stated that he used the gun for protection. Officer Brede did not ask any follow-up questions concerning the gun, instead questioning both men about the shoplifting charge incident. After the investigation, Officer Brede took defendant to the police station as a result of defendant's possession of the gun. After the questioning at the store, defendant was no longer considered a suspect in the shoplifting incident.

## DISCUSSION

Defendant moves the Court to suppress all evidence seized from the pat-down search of defendant and his jacket because the search violated defendant's Fourth Amendment rights. Specifically, defendant argues that Officer Brede did not have an articulable and reasonable suspicion that he was armed and dangerous, and therefore, could not lawfully perform the pat-down search. Defendant also argues that because the search was unlawful, any incriminating statements defendant made pursuant to the search must be suppressed as fruit of the poisonous tree.

*The Pat–Down Search of Defendant and His Jacket was Lawful*

■ The Fourth Amendment of the United States Constitution protects individuals against unreasonable searches and seizures. *See* U.S. Const. Amend. IV. The United States Supreme Court recognizes that a search for weapons is a serious intrusion upon the sanctity of a person and must not be undertaken lightly. *See Terry v. Ohio,* 392 U.S. 1, 17, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Thus, when an officer stops a person and conducts a pat-down search on the outer surfaces of the person's clothing, a search has occurred and requires the protection of the Fourth Amendment. *See id.* at 19, 88 S.Ct. 1868.

■ The Supreme Court, however, also recognizes that courts must balance a defendant's Fourth Amendment rights with the need to secure law enforcement officers' safety while investigating crimes. Accordingly, the Court has held that a law enforcement officer is "entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." *Id.* at 30, 88 S.Ct. 1868. In the course of a valid investigative detention, an officer may conduct a limited protective search if he harbors an articulable and reasonable suspicion that the person is armed and dangerous or that "the person stopped is engaged in criminal activity." *See United States v. Davis,* 94 F.3d 1465, 1468–70 (10th Cir.1996).

■ In the instant case, the legality of the search of defendant hinges on whether (1) the search occurred pursuant to a valid investigative detention, and (2) Officer Brede had an articulable and reasonable suspicion that defendant was armed and dangerous or that criminal activity was afoot. *See Davis,* 94 F.3d at 1468, 1470. With respect to the validity of the investigative detention, the Court finds that defendant Mitchell was validly detained. It is undisputed that Officer Brede was dispatched to the Evolution store to investigate an alleged shoplifting incident. When he arrived at the store, Officer Brede saw

two individuals, one of whom he learned was the store manager. The manager told Officer Brede that the other man—defendant herein—was in possession of stolen pants. At this point, Officer Brede believed defendant to be the suspect in the shoplifting crime and therefore asked both men to enter the store for further questioning.

Reviewing Officer Brede's actions, the Court finds that Officer Brede reasonably believed he needed to further question defendant as a suspect in the shoplifting incident. Indeed, Officer Brede's belief that defendant was the possible perpetrator of the crime establishes that it was reasonable and necessary to detain defendant for further investigation. Accordingly, the Court finds that Officer Brede legitimately detained defendant and that the search was incident to a valid investigative detention.

With respect to whether Officer Brede had an articulable and reasonable suspicion that defendant was armed or dangerous or that criminal activity was afoot, the Court is required to ask if the conduct of the officer, considering the totality of the circumstances and information, is appropriate under a reasonable person standard. *See United States v. Lang,* 81 F.3d 955, 965 (10th Cir.1996). In the instant case, the Court finds that it was appropriate for Officer Brede to perform a pat-down search of defendant to secure his safety before questioning the suspect. Officer Brede knew both from personal experience and training that he was in a high-crime area where persons often carried concealed weapons. Officer Brede also unequivocally stated that he believed defendant to be the suspect in the shoplifting crime. By this very declaration, Officer Brede believed defendant to be engaged in criminal activity and therefore, pursuant to *United States v. Davis,* 94 F.3d 1465 (10th Cir.1996), Officer Brede could secure his

safety by performing a pat-down search of defendant and his jacket. Thus, the Court finds the pat-down search of defendant and his jacket to be proper and not violative of defendant's Fourth Amendment rights.

Defendant relies heavily on *Davis* to support his argument Officer Brede did not have an articulable or reasonable suspicion that criminal activity was afoot. Therefore, defendant argues, the evidence seized from the pat-down search must be suppressed. The Court disagrees with defendant's argument and finds the facts and reasoning of *Davis* inapplicable to the instant case.

*Davis* involved a police-citizen encounter where three Tulsa police officers approached defendant Davis while he was walking towards a "juice joint," *i.e.,* a business that sells liquor without a license. The officers testified, however, that they also knew that legitimate activities took place within the building. During the night in question, the officers watched defendant approach the juice joint. When the defendant saw the policemen, he became agitated, failed to make eye contact, and kept his hands in his pockets. The police officers asked Davis to stop, which he failed to do. The officers then grabbed Davis by the arms, took him to his car, and told him to place his hands on top of the vehicle. Instead, Davis opened the car door and threw a firearm into the back seat of the vehicle. The officers seized the firearm and arrested Davis. The trial court denied Davis' motion to suppress, finding that the officers had a reasonable and articulable suspicion of criminal activity such that they could stop and search Davis.

On appeal, the Tenth Circuit reversed the trial court, finding that the officers did not have any particularized basis for suspecting that the defendant was armed and

dangerous or engaged in criminal activity. *See Davis*, 94 F.3d at 1469. The court ruled that the officers' perceptions were nothing more than "an inchoate and unparticularized suspicion or 'hunch.'" *Id.* at 1468 (citations omitted). Specifically, the Tenth Circuit found that defendant's actions—walking towards a juice joint, appearing nervous, keeping his hands in his pocket, and failing to stop when asked to do so—did not justify an investigative detention of Davis. Therefore, the court reasoned, the discovery of the gun was fruit of an illegal investigative detention and must be suppressed.

This Court finds *Davis* to be significantly dissimilar to the instant case. Here, Officer Brede was dispatched to the Evolution store solely to investigate a reported crime. Upon arriving at the store, the store manager told Officer Brede that defendant was in possession of stolen pants. At that point, Officer Brede believed that defendant was involved in the criminal activity in a high-crime area. Unlike the officers in *Davis*, Officer Brede had been specifically told that defendant possessed stolen goods; his belief that defendant was the suspect was not "an inchoate and unparticularized suspicion or 'hunch'" in any sense of the word. Rather, Officer Brede believed defendant was a suspect in a crime that had been committed in a high-crime area. Accordingly, the Court finds that it was appropriate for Officer Brede to search defendant to ensure his safety and therefore, the search did not violate defendant's Fourth Amendment rights.

*Defendant's Voluntary Statements are Admissible*

■ Finally, defendant argues that the Court should suppress defendant's statements regarding the existence and purpose of the gun in his jacket as fruit of the poisonous tree. *See Wong Tai v. United States*, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927). Specifically, defendant contends that because Officer Brede did not have an articulable or reasonable suspicion that criminal activity was afoot when he searched defendant, the Court must suppress any evidence stemming from the violative search. Thus, the admissibility of defendant's statements hinges on whether the pat-down search of defendant was lawful. Having previously found the pat-down search did not violate defendant's Fourth Amendment rights, the Court finds defendant's argument without merit. Because Officer Brede had an articulable and reasonable suspicion to perform the search, defendant's statements are not fruit of an illegal search and therefore need not be suppressed.

■ Furthermore, although defendant did not address the issue—instead, basing his entire argument on the proposition that the pat-down search was illegal— the Court finds it necessary to discuss the voluntariness of defendant's statements. In *Miranda v. Arizona*, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of the procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Supreme Court and Tenth Circuit have also held that spontaneous statements, not made in response to questions or interrogation, are admissible even in the absence of any *Miranda* warnings. *See Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *United States v. Smith*, 776 F.2d 892 (10th Cir.1985). Furthermore, when a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible. *See United States v. Muniz*, 1 F.3d 1018,

1022 (10th Cir.1993); *United States v. Torres–Guevara,* 147 F.3d 1261 (10th Cir. 1998).

■ In the instant case, it is undisputed that defendant's statement that the pistol was in his jacket was made prior to defendant being placed in handcuffs and prior to any arrest. It is also undisputed that this statement was not the result of defendant being questioned or unduly pressured. Simply stated, defendant spontaneously volunteered the information regarding the pistol when Officer Brede began his lawful search of the jacket. Based on these undisputed facts, the Court finds that defendant's statement concerning the existence of the gun was voluntary and should not be suppressed.

■ With respect to defendant's statement that he used the weapon for protection, the Court again finds that the statement should not be suppressed. While defendant made the instant statement after he was placed in handcuffs, it is undisputed that Officer Brede did not ask defendant any questions to elicit this information. Rather, Officer Brede questioned the store manager and defendant with respect to the shoplifting incident. Defendant does not dispute this fact. Accordingly, because defendant spontaneously volunteered this information, the Court finds it proper to admit this statement as well. Thus, defendant's two statements regarding the existence and purpose of the gun on March 8, 2001, are deemed admissible for trial.

### CONCLUSION

For the reasons stated above, the Court DENIES defendant's motion to suppress all evidence seized and the incriminating statements made as a result of the pat-down search of defendant and his jacket. IT IS SO ORDERED.