**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 8 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DENNIS LEE DAVIS,

      Defendant-Appellant.

No. 03-5010
(Northern District of Oklahoma)
(D.C. No. 02-CR-43-K)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

---

## I.     INTRODUCTION

Appellant-defendant Dennis Lee Davis was indicted for the possession of a firearm and ammunition after former conviction of a felony in violation of 18 U.S.C. § 922(g)(1) and § 924(e). Davis was convicted of the offense after a jury trial.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

At a pre-trial hearing, Davis testified that he did not own the truck or the toolbox in which the firearm was found. The defense moved to suppress evidence of the loaded firearm and stolen checkbooks derived from a search of Davis' toolbox. The district court denied the motion and admitted the evidence of the firearm and stolen checkbooks at trial.

At the end of the government's case, Davis' counsel moved for judgment of acquittal. The district court denied the motion and instructed the jury that the government must prove that defendant "knowingly possessed" a firearm, but did not state that the defendant must have been aware that the firearm he possessed fit the statutory definition of a firearm. The jury instructions did, however, define a firearm, in relevant part, as "any weapon which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." Defense counsel agreed to the instructions on "knowingly possessed." Following the guilty verdict, Davis was sentenced to 280 months imprisonment, four years of supervised release, and a $5000 fine.

Exercising jurisdiction pursuant 18 U.S.C. § 1291, this court **affirms** the district court's denial of the defense motion to suppress the evidence seized from the toolbox. This court **affirms** the district court's admission of the evidence of the stolen checkbooks and prior burglary, as well as its jury instructions.

## II.    BACKGROUND

Tulsa police officer William Wolthius was on patrol around 9:30 p.m. on November 9, 2001 in Tulsa, Oklahoma, when he observed Davis "digging in a toolbox" in the back of a parked pickup truck. Wolthius drove around the block a few times, saw the truck drive away, and noticed that a tail light on the truck was not working and the license tag was unreadable because it was covered with mud. The driver then failed to signal a right turn. Wolthius made a traffic stop, asked for Davis' driver's license and insurance verification form. Davis only produced his driver's license. Wolthius ran a background check which showed that Davis was driving with a suspended license and had previous felony convictions for drugs, burglary and a stolen vehicle and was to be considered armed and dangerous. After running the background check, Wolthius decided to arrest Davis for driving with a suspended license.

At that point, Wolthius re-approached the truck and asked Davis if he knew he was driving with a suspended license. Wolthius asked Davis if he had anything illegal on his person and Davis answered he did not. Wolthius then asked Davis to step out of the vehicle, patted him down for weapons, and had Davis sit on the curb with a back-up officer, Williams, guarding Davis from behind. Wolthius testified that he obtained Davis' consent to search the vehicle and proceeded to search the interior of the vehicle. Wolthius observed a locked

toolbox in the bed of the truck and asked Davis if he had the keys; Davis responded he did not. Davis appeared to become agitated, began shaking, balled his fist, and told Wolthius he did not want him to search the toolbox. At this point, Wolthius became concerned about his safety, handcuffed Davis, put him in the patrol vehicle, and radioed for drug sniffing dogs ("drug dogs") and a tow truck. The drug dog arrived approximately 20 minutes later and indicated the presence of contraband in the toolbox. After the drug dog alert, Wolthius opened the toolbox with a screwdriver. Inside he found, *inter alia*, a Bryco .380 caliber pistol loaded with six live rounds of ammunition, drugs, and some checkbooks that had been stolen on November 8, 2001. The government concedes that Davis did not consent to the opening of the toolbox and the search of its contents.

According to Tulsa police policy, once Davis was arrested his vehicle was to be inventoried and towed. The policy stated that an inventory should include an accounting of the contents of containers such as the locked toolbox. Wolthius testified that he inventoried the vehicle according to the police department policy after the drug dog alert. Wolthius' testimony about inventorying the vehicle was corroborated by that of his back-up, officer Williams.

No fingerprints directly traceable to Davis were found on the firearm itself. Davis' fingerprints were, however, on the checkbooks that were found inside the

toolbox and next to the firearm. In addition, the evidence shows that the firearm and ammunition were manufactured outside of Oklahoma.

## III. DISCUSSION

The ultimate determination of the reasonableness of a warrantless search or seizure under the Fourth Amendment is a determination of law that this court reviews *de novo*. *United States v. Jones*, 44 F.3d 860, 872 (10th Cir. 1995). When reviewing the denial of a motion to suppress, the district court's findings of fact are reviewed for clear error. *Id*. On review of a denial of a suppression motion, this court considers the totality of the circumstances and views the evidence in the light most favorable to the government. *United States v. Hunnicutt*, 135 F.3d 1345, 1347 (10th Cir. 1998).

This court reviews a district court's admission of evidence for an abuse of discretion. *United States v. Mitchell*, 113 F.3d 1528, 1531 (10th Cir. 1997). Jury instructions as to which no timely objection was made are reviewed for plain error. *United States v. Barrera-Gonzales*, 952 F.2d 1269, 1270-71 (10th Cir. 1992).

### A. Suppression of evidence derived from the search of the toolbox

The evidence of the firearm and stolen checkbooks found in the toolbox were relevant to the governments' case because the firearm was central to the offense, and the fingerprints found on the checkbooks tended to show that Davis

had access to the toolbox where the firearm was located. The district court would have erred in not suppressing the evidence found in the toolbox, however, if such evidence was unreasonably seized in a warrantless search. *See United States v. Stone*, 866 F.2d 359, 362 (10th Cir. 1989).

A routine traffic stop is a seizure within the meaning of the Fourth Amendment, but it is characterized as an investigative detention rather than a custodial arrest. *See Berkermer v. McCarty*, 468 U.S. 420, 437-39 (1984). Evidence derived from an investigative detention is valid if the detention was justified at its inception and the search was reasonably related in scope to the basis for the stop. *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). A traffic stop is justified at its inception if it is based on an observed traffic violation. *Hunnicutt*, 135 F.3d at 1348. In a routine traffic stop, the detention must be temporary and last no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be tailored to the underlying justification. *Terry*, 392 U.S. at 18-20. An officer is entitled to ask such questions, examine personal and automobile documentation, and run such computer verifications as are necessary to determine that the driver has a valid license and is entitled to operate the vehicle. *United States v. Wood*, 106 F.3d 942, 945 (10th Cir. 1997). Once such matters are concluded, however, the detainee must be allowed to leave without

being delayed by further police questioning. *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999).

In this case, the initial stop was justified by Davis' observed traffic infractions. *See Hunnicutt*, 135 F.3d at 1348. Oklahoma law allowed the officers to arrest Davis once they determined that Davis was driving with a suspended license. Wolthius testified that he intended to arrest Davis when the background check indicated that Davis was driving with a suspended license.

Davis argues that he was not under arrest until he was handcuffed and that the officers were therefore constrained to the constitutional scope of searches attendant to traffic stops. A police officer has probable cause to arrest an individual when all of the facts and circumstances would lead a reasonable person to believe that an offense has been or is being committed. *United States v. Patane*, 304 F.3d 1013, 1016 (10th Cir. 2002). An arrest is made when a reasonable person in the defendant's position would understand that he was not free to leave. *United States v. Torres-Guevara*, 147 F.3d 1261, 1264 (10th Cir. 1998).

There is no question that Wolthius had probable cause to arrest Davis because Oklahoma law explicitly allowed officers to arrest someone for driving with a suspended license. In addition, a reasonable person in Davis' position would not have believed that he was free to leave. Wolthius specifically told

Davis that he was driving with a suspended license, asked him to step out of the car, patted him down for weapons, and had Officer Williams guard Davis on the curb. Under these circumstances, a reasonable person would not have believed that he was free to leave. *See id.* (setting out factors to be considered in determining whether a reasonable person would have believed he was under arrest). Therefore, Davis was under arrest.

Once Davis was under arrest, Tulsa police policy required his vehicle to be impounded and inventoried. A routine inventory search of a lawfully impounded vehicle is a well-established exception to the Fourth Amendment's warrant requirement. *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976). The opening of closed containers found during an inventory search of an automobile does not violate the Fourth Amendment if conducted pursuant to a standardized policy. *Florida v. Wells*, 495 U.S. 1, 4 (1990). The Tulsa policy was standard procedure and stated that an inventory should include an accounting of the contents of containers such as the locked toolbox. Wolthius inventoried the vehicle, including the contents of the toolbox, according to this police department policy. The evidence in the toolbox was therefore seized pursuant to a valid inventory search.

For all these reasons, the district court did not err in refusing to suppress the evidence seized from the toolbox. The denial of the motion to suppress is therefore **affirmed**.

## B. Admissibility of evidence of prior burglary and forgery

Davis argues that the trial court's admission of the evidence that he burglarized a home and forged stolen checks is reversible error. First, Davis argues that such evidence was irrelevant because burglary and forgery in no way made it more probable that he possessed a gun and ammunition at the time of his arrest. This court disagrees. The evidence of Davis' fingerprints found on the checkbooks is relevant because it tends to show that Davis had access to the toolbox as recently as the day before his arrest. No fingerprints traceable to Davis were found on the firearm itself. Therefore the government needed to use the fingerprints found on the checkbooks to demonstrate that Davis had recently accessed the inside of the toolbox and was aware of its contents, including the firearm.

In addition, the checkbooks and the burglary victim's testimony that Davis was not authorized to take the checkbooks were properly admitted. Evidence of a defendant's prior bad acts is properly admitted if: 1) it is offered for a proper purpose under Fed. Rule of Evid. 404(b); 2) it is relevant under Fed. Rule of Evid. 401; 3) the probative value of the evidence is not substantially outweighed

by its potential for unfair prejudice under Fed. Rule of Evid. 403; and 4) the district court, upon request, instructs the jury to consider the evidence only for the purpose for which it was admitted. *U.S. v. Tan*, 254 F.3d 1204, 1207 (10th Cir. 2001). Davis does not argue that the district court did not give the jury a requested limiting instruction.

As demonstrated above, the evidence in question was relevant to Davis' knowledge of the firearm's presence in the toolbox. The testimony about the burglary and forgery was necessary to show that Davis had accessed the inside of the toolbox the day before his arrest. Without proving that the checkbooks were stolen the day before Davis was arrested, the government would not have been able to prove its case as effectively because a juror could have inferred that the checkbooks had been placed in the toolbox by Davis long before the firearm was placed there by someone else. This lack of temporal connection would in turn undermine the government's ability to prove that Davis knew, as recently as the day before his arrest, that there was a firearm inside the toolbox he possessed.

In addition, the evidence of the stolen checkbooks was offered and admitted for a proper purpose. Evidence is admitted for a proper purpose under Fed. Rule of Evid. 404(b) if it is offered for a purpose other than to show criminal propensity. *See Tan*, 254 F.3d at 1208. The evidence in this case was admitted

for the proper purpose of showing that Davis had access to the inside of the toolbox and therefore to the firearm, which is key to the government's case.

Lastly, Fed. R. Evid. 403 does not require exclusion of the checkbooks and testimony about the burglary. Exclusion of otherwise admissible evidence under Rule 403 is an extraordinary remedy that should be used sparingly. *Tan*, 254 F.3d at 1211. The probative value of the evidence admitted in this case was high because Davis denied that he owned or had access to the toolbox where the firearm was located. Thus, Davis' knowledge of his possession of the firearm is at issue in this case. The evidence of his fingerprints on the checkbooks that were stolen a day earlier and found next to the firearm is probative of Davis' access to the inside of the toolbox the day before his arrest, impugns Davis' testimony to the contrary, and therefore had a high probative value.

The potential for unfair prejudice, on the other hand, was low. Unfair prejudice within the meaning of Fed. Rule of Evid. 403 means an *undue* tendency to suggest decision on an improper basis, commonly an emotional one, *wholly apart* from the accused's guilt or innocence of the crime charged. *Tan*, 254 F.3d at 1211-12. Even if unfair prejudice is found, it must *substantially* outweigh the probative value of the evidence to warrant exclusion under Rule 403. *Id.* at 1212. The district court in this case only admitted evidence of the checkbooks that was necessary for the fingerprint identification; the drugs found in the toolbox were

not admitted. The burglary victim merely testified, in a sanitized and non-emotive fashion, that her house was broken into, that the checkbooks in evidence were her missing checkbooks, and that Davis did not have her authorization to possess them. Such evidence was unlikely to arouse the jury's passions to such an extent, or to create such confusion, that they would convict Davis on emotional grounds or because of his prior bad acts. Thus, the potential for unfair prejudice does not substantially outweigh the probative value of the evidence that was admitted. The district court therefore did not abuse its discretion in admitting this evidence.

### C. Jury Instructions

Davis' trial counsel did not object to the jury instructions. As a consequence, this court now reviews the instructions for plain error. *Barrera-Gonzales*, 952 F.2d at 1270-71. The district court's jury instructions on knowing possession of a firearm were not plainly erroneous. In *United States v. Marshall*, 307 F.3d 1267, 1270 (10th Cir. 2002), this court held that, in a trial for knowing possession of a firearm by a convicted felon, a jury instruction which stated that "[t]he government must prove beyond a reasonable doubt that the Defendant had knowledge that what he was possessing was a firearm" was not plainly erroneous. The jury instructions in this case were nearly identical, also stating that the government must prove beyond a reasonable doubt that Davis knowingly possessed a firearm.

The jury instructions in this case further defined a firearm as "any weapon which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." Contrary to Davis' argument, there is no requirement that the district court further instruct the jury that Davis must have been aware that the firearm he possessed fit the statutory definition of a firearm. First, the statute under which Davis was convicted contains no requirement that a defendant be aware that the firearm in his possession fits the statutory definition of a firearm. 18. U.S.C. § 922 (g)(1). It suffices that the defendant knows that the thing he possesses is *a* firearm. *Id.* Second, as mentioned above, a nearly identical jury instruction on knowing possession of a firearm was upheld in *Marshall. See* 307 F.3d at 1270. For all these reasons, the jury instructions adequately stated the law and provided the jury with an ample understanding of the issues and applicable legal standards. *Barrera-Gonzales*, 952 F.2d at 1270-71. This court therefore **affirms** the district court's jury instructions.

## IV. CONCLUSION

For the foregoing reasons, this court **AFFIRMS** the district court's denial of the defense motion to suppress evidence, its admission of the evidence of the

stolen checkbooks and prior burglary, and its jury instructions on knowing possession of a firearm.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge