**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 17 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DANIEL P. STARR,

      Plaintiff-Appellant,

v.

OFFICER DOWNS,

      Defendant-Appellee,

and

STATE OF OKLAHOMA,

      Defendant.

No. 03-5170
(D.C. No. 01-CV-279-H)
(N.D. Okla)

---

**ORDER AND JUDGMENT** *

---

Before **KELLY** , **HARTZ** , and **TYMKOVICH** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff, proceeding pro se, appeals the district court's entry of summary judgment on his 42 U.S.C. § 1983 civil-rights claims. Plaintiff asserted that Officer Jeffery Thomas Downs of the Tulsa Police Department stopped and detained him on account of his race and without sufficient cause, in violation of his rights under the Fourth Amendment and the Equal Protection Clause. He also asserted that his automobile was illegally searched. [1] We affirm summary judgment in favor of Defendant Downs on Plaintiff's Fourth Amendment claim concerning the stop. We reverse and remand for further proceedings with regard to Plaintiff's equal-protection claim. We affirm the denial of Plaintiff's motion to amend to name the City of Tulsa and a second police officer, Ms. Sherrill, as Defendants.

---

[1] Plaintiff also appears to have claimed that Officer Downs should be held liable for attempting to question him without providing the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). The only available remedy for a *Miranda* violation, however, is the suppression of an incriminating statement. "[V]iolations of *Miranda* rights do not subject police officers to liability under § 1983." *Marshall v. Columbia Lea Reg'l Hosp*., 345 F.3d 1157, 1165 n.6 (10th Cir. 2003).

-2-

## BACKGROUND

About 1:30 a.m. on March 10, 2001, Plaintiff, an African-American individual, entered a friend's basement apartment in a building allegedly used for drug trafficking. Plaintiff, however, was there simply to obtain a place to stay for the night. He asked his friend if he could stay with him and, upon receiving permission, decided to purchase groceries for the friend, himself, and a neighbor. He emerged from the building approximately ten minutes after he entered. He then got into his car and began a trip to a convenience store.

Plaintiff's activities had been under police surveillance. He soon noticed a police car, driven by Officer Downs, following him, so he pulled over to the side of the road and stopped before Officer Downs activated his police car lights or siren.[2] Officer Downs walked up to Plaintiff's car and asked whether Starr had any drugs in the car. Downs then ordered Plaintiff out of the car. When Plaintiff complied, Downs handcuffed him and placed him in the front seat of the police vehicle.

In the police car Officer Downs resumed his drug-related questioning. Downs obtained Plaintiff's name and radioed to dispatch for a record check.

---

[2] Officer Downs states that he observed Plaintiff commit a traffic violation and that he stopped Plaintiff for this infraction. For purposes of this order and judgment, we accept Plaintiff's version of the facts: that is, he committed no violation and he pulled over before Downs attempted to stop him.

-3-

He eventually learned that Plaintiff had an outstanding warrant for first degree rape, rape by instrumentation, and robbery. Downs informed Plaintiff of the warrants and arrested him.

Although the summary-judgment filings do not provide clear timing information, at some point another police vehicle arrived on the scene. A female officer, later identified as Officer Sherrill, got out of the vehicle and proceeded to conduct a search of Plaintiff's automobile. Carrying a flashlight, she entered Plaintiff's car, took an object out, and brought it to Officer Downs, who was in his police vehicle with Plaintiff. Downs told her to return the object to the car because he did not want it. She went back to Plaintiff's car, found his wallet under the armrest, and delivered it to Downs. The successful records check may have relied on identification documents contained in the wallet. [3]

Plaintiff was later convicted of the rape charges entered in his computer record. While incarcerated, he filed this lawsuit, naming Officer Downs and the State of Oklahoma as Defendants. The State was dismissed from the action,

---

[3] During his deposition Plaintiff first stated that he was not sure whether the second police officer arrived "before or after the warrant came back on the radio." R., Doc. 18, Ex. A at 37-38. He later corrected himself, stating that he had not told Officer Downs his name and that his "name came up because [the second officer] pulled [Plaintiff's] wallet out and then brought the wallet to the car. That's how [Downs] got my ID because he never did question me about my name." *Id.* at 41; *but see id.* at 35-36 (stating that Downs asked Plaintiff his name when Plaintiff was first put in the vehicle).

apparently without objection from Plaintiff.  After obtaining Plaintiff's deposition testimony, Officer Downs filed a motion for summary judgment, arguing entitlement to qualified immunity.  Plaintiff, upon learning the identity of Officer Sherrill, sought to amend the complaint to add Sherrill and the City of Tulsa as Defendants.  The magistrate judge to whom the case was referred issued a report, which recommended granting Downs' summary-judgment motion and denying Plaintiff's motion to amend.  The district court adopted and affirmed the magistrate judge's report and recommendation.  This appeal followed. [4]

## DISCUSSION

**Summary Judgment on Fourth Amendment Claims**

We review a grant of summary judgment de novo, applying the same standard that the district court should have applied.  *See Hollingsworth v. Hill*, 110 F.3d 733, 737 (10th Cir. 1997).  We view the evidence and any inferences therefrom in the light most favorable to the non-moving party.  *J.B. v. Washington County*, 127 F.3d 919, 923 (10th Cir. 1997).  We will affirm a grant of summary judgment when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[4]     In this court Plaintiff has made several allegations concerning the invalidity of his conviction of first-degree rape and rape by instrumentation.  These allegations are irrelevant to the instant case and we do not consider them.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id*. (quoting Fed. R. Civ. P. 56(c)).

When summary judgment is founded on the defense of qualified immunity, the Plaintiff must first present facts to "show that . . . the official violated a constitutional or statutory right." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). "If a favorable view of the facts alleged show[s] the violation of [such a] right, the next, sequential step is to ask whether the right was clearly established at the time of the defendant's unlawful conduct." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (internal quotation marks omitted). If there is no genuine controversy regarding any material fact that would defeat the Defendant's claim of qualified immunity, the Defendant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

This appeal concerns Officer Downs' treatment of Plaintiff during their early morning interaction. There are three categories of police-citizen encounters, each of which triggers a different standard. First, there are consensual encounters, which are entirely outside the scope of the Fourth Amendment. *See United States v. Torres-Guevara*, 147 F.3d 1261, 1264 (10th Cir. 1998). Second, there are investigative detentions, commonly referred to as *Terry* stops, "'which are Fourth Amendment seizures of limited scope and duration and must be

supported by a reasonable suspicion of criminal activity.'" *Id*. (quoting *United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996)). The third category consists of custodial arrests that are reasonable under the Fourth Amendment only if supported by probable cause. *See id*.

"These categories are not static." *Shareef*, 100 F.3d at 1500. "A consensual encounter may escalate into an investigative detention," and "[a]n investigative detention may escalate into a full-blown arrest." *Id.* The "reviewing court must analyze each stage of the encounter, ensuring that the requisite level of suspicion or cause is present at each stage." *Id.*

Plaintiff's encounter with Officer Downs covered the continuum. It began with Plaintiff's consent, without Fourth Amendment ramifications, in that he voluntarily stopped his car upon seeing the police vehicle. It culminated in Plaintiff's arrest based on a valid warrant for an offense entirely unrelated to the events that occurred at the time of the stop. (This arrest in itself cannot be the basis for a lawsuit against Downs. *See Turney v. O'Toole*, 898 F.2d 1470, 1472 (10th Cir. 1990) (officers executing a facially valid order are absolutely immune from liability for damages); *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 947-48, 951-53 (9th Cir. 2003) (plaintiff's challenge to traffic stop survived summary judgment on qualified-immunity grounds, but not claim based on a subsequent arrest arising out of an outstanding warrant). Between the voluntary

stop and the arrest, however, the encounter became an involuntary detention. Plaintiff did not volunteer to be handcuffed.

The issue becomes whether Officer Downs had reasonable suspicion of criminal activity that would have justified an investigative detention and the handcuffing of the Plaintiff before Plaintiff's arrest on the outstanding warrant. *See United States v. Burton*, 228 F.3d 524, 527-28 (4th Cir. 2000) (reasonable suspicion must exist before protective measures occur). We conduct a "'dual inquiry, asking first 'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Holt*, 264 F.3d 1215, 1228 (10th Cir. 2001) (quoting *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (further internal quotation marks omitted)). If a favorable view of the facts alleged by Plaintiff may show a Fourth Amendment violation, we must turn to the next step of the qualified-immunity analysis and ask whether this right was clearly established at the time of the stop. *See Holland*, 268 F.3d at 1186. "It has been settled law since the 1970's that in order for a police officer to initiate an investigatory stop of a motorist, there must at least exist reasonable suspicion that the motorist is engaging in illegal activity." *Bingham*, 341 F.3d at 948 (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)).

Accordingly, we inquire whether Officer Downs' observations of Plaintiff gave rise to a reasonable, articulable suspicion of criminal activity. We recognize that "when used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion." *United States v. Cortez*, 449 U.S. 411, 419 (1981). Nevertheless, an officer's suspicion that an individual is involved in criminal activity must be "based on objective facts" which support that conclusion. *Brown v. Texas,* 443 U.S. 47, 51-52 (1979).

The undisputed facts in the record demonstrate that Downs saw Plaintiff leave an apartment building at 1:30 in the morning after making a quick visit. Downs also stated in an affidavit that "I know the apartment building . . . is used for drug trafficking." R., Doc. 30, Ex. A at 1, ¶ 5. Although the affidavit was prepared for summary judgment purposes on October 16, 2002, the affidavit in context is describing events that occurred on March 10, 2001. The affidavit indicates that Downs has personal knowledge of the building's history and that fact would be admissible in evidence. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). We may rely on that fact in our analysis because Plaintiff has not set forth specific facts showing that there is a genuine issue for trial concerning Officer Downs' knowledge of drug trafficking at the

building on the morning in question. Indeed, Officer Downs immediately began questioning Plaintiff about drugs, suggesting that a drug investigation was in progress. We also know that Plaintiff pulled over voluntarily when he suspected he was being followed by Officer Downs. Our summary judgment standard requires us to view the facts in the light most favorable to the non-moving party; it does not require us to make unreasonable inferences in favor of the non-moving party. *See Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). Under these circumstances, we have no basis to disregard Officer Downs' assertion that he observed Plaintiff in a known area of drug activity. [5]

Merely because Plaintiff was present near a building used for drug trafficking is not enough for reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). But the totality of the circumstances must be considered. *See*

_____

[5] The dissent's observation that Officer Downs may have gained his knowledge well after Plaintiff's arrest simply is not a reasonable inference. First, as noted above, the sequence of events suggests a drug trafficking investigation. Second, given the consensual nature of the initial encounter, Officer Downs needed only reasonable suspicion that would have justified an investigative detention and the handcuffing of the Plaintiff before Plaintiff's arrest on the outstanding warrant. In other words, when Plaintiff was handcuffed, the reasonable suspicion to justify an investigative detention existed even if part of the basis for that reasonable suspicion had been learned through surveillance of the Plaintiff or apartment building in question. Third, the degree of precision the dissent would require in the affidavit is contrary to the purpose of summary judgment–"to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. The moving party need only point out that the nonmoving party cannot prove an essential element of his case–there is no requirement that the moving party negate the nonmovant's claims. Id. at 323.

-10-

*United States v. Johnson*, 364 F.3d 1185, 1194 (10th Cir. 2004). Plaintiff made a quick visit at 1:30 a.m. (an unusual hour) to an apartment used for drug trafficking and then, when he recognized he was being followed, he pulled over (perhaps suggesting a confrontation). Given reasonable suspicion, an officer may take reasonable precautions to protect his safety and maintain the status quo during an investigative detention, without the encounter ripening into an arrest. *See United States v. Hensley*, 469 U.S. 221, 235 (1985); *United States v. Shareef*, 100 F.3d 1491, 1502 (10th Cir. 1996); *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993). An objectively reasonable officer would have done the same thing as Officer Downs. There is no indication that Officer Downs prolonged the investigative detention while running a records check. *See United States v. Sharpe*, 470 U.S. 675, 683 (1985) (finding twenty minute Terry stop reasonable under all the circumstances).

Likewise, Plaintiff's claim against Officer Downs concerning the search of his automobile is subject to summary judgment. "'[P]ersonal participation is an essential allegation'" that must be proven before a Plaintiff can recover on a § 1983 claim. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996)(quoting *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). From the record it is plain that Downs did not participate in the search. The district court properly

-11-

determined that Downs is entitled to qualified immunity and summary judgment in his favor on Plaintiff's unlawful-search claim.

**Summary Judgment on Equal-Protection Claim**

After analyzing the Fourth Amendment issues, the district court entered summary judgment on the entirety of Plaintiff's case. But in addition to Fourth Amendment claims, Plaintiff asserted a violation of the Equal Protection Clause, which precludes selective enforcement of the law based on race or ethnicity. *See Whren v. United States*, 517 U.S. 806, 813 (1996). "[C]laims asserting selective enforcement of a law on the basis of race are properly brought under the Equal Protection Clause, and . . . the right to equal protection may be violated even if the actions of the police are acceptable under the Fourth Amendment." *Marshall*, 345 F.3d at 1166.

Plaintiff's equal-protection claim was not challenged in Officer Downs' summary-judgment motion, and not addressed in the magistrate judge's report and recommendation adopted by the district court. Plaintiff had no notice that his equal-protection claim was subject to summary judgment and therefore had no opportunity to support his accusations of discriminatory enforcement. Hence we must reverse and remand for further proceedings on the equal-protection claim.

**Motion to Amend**

Plaintiff moved to amend his complaint to add as defendants the City of Tulsa and Officer Sherrill. The district court denied the motion, based on a conclusion that the amended complaint would be subject to dismissal for failure to state a claim. Although leave to amend is to be "freely given," Fed. R. Civ. P. 15(a), and "pro se litigants are to be given reasonable opportunity to remedy the defects in their pleadings," *Hall*, 935 F.2d at 1110 n.3, a "district court may deny leave to amend where amendment would be futile." *Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). "We review the denial of a motion for leave to amend for abuse of discretion." *Id*.

Officer Downs was investigating suspected drug trafficking at 1:30 a.m. on city streets, a situation where the threat of guns in proximity is hardly illusory. *See United States v. Martinez*, 938 F.2d 1078, 1083 (1991) (recognizing firearms as "tools of the trade" frequently used to facilitate drug trafficking). That being the case, once there was a basis for reasonable suspicion (as we have just held), Officer Sherrill's protective search of the vehicle would be proper, even assuming that in the course of the search the officers learned of Plaintiff's identity which facilitated his arrest. *See Thornton v. United States*, 124 S. Ct. 2127, 2130 (2004); *Knowles v. Iowa*, 525 U.S. 113, 118 (1998); *Michigan v. Long*, 463 U.S. 1032, 1049-1052 (1983). Officer Sherrill would be deemed to have the knowledge that

Officer Downs possessed. *United States v. Morgan*, 936 F.2d 1561, 1569 (10th Cir. 1991); *Karr v. Smith*, 774 F.2d 1029, 1032 (10th Cir. 1985). It would be odd to hold that Plaintiff could be handcuffed for officer safety given reasonable suspicion arising from the suspected drug transaction and his voluntary stop, but conclude that the vehicle was off limits. Moreover, given that Plaintiff has no Fourth Amendment right to refuse to identify himself in these circumstances given reasonable suspicion, *see Hibel v. Sixth Jud. District Ct.*, 124 S. Ct. 2451, 2458 (2004), Plaintiff cannot claim damages from an identification based upon the documents in his wallet. Plainitff has not sought to raise a Fifth Amendment claim. We conclude that the district court did not abuse its discretion in denying the motion to amend as to Officer Sherrill or the City of Tulsa in relation to the Fourth Amendment claims. On remand, the district court should determine whether Plaintiff should be allowed to pursue a motion to amend to add the City of Tulsa in connection with his equal protection claim.

**Appointment of counsel**

Finally, Plaintiff argues that the district court improperly denied him appointment of counsel. "There is no constitutional right to appointed counsel in a civil case." *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989). Under 28 U.S.C. § 1915(e)(1), a district court is permitted to appoint counsel after considering "the merits of the litigant's claims, the nature of the factual issues

-14-

raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (internal quotation marks omitted). The district court considered these factors and found appointment of counsel unnecessary. The district court did not abuse its discretion in denying Plaintiff's request for appointment of counsel.

## CONCLUSION

We AFFIRM the district court's grant of Officer Downs' motion for summary judgment on Plaintiff's Fourth Amendment claims, but REVERSE and REMAND for further proceedings on Plaintiff's claim under the Equal Protection Clause. We AFFIRM the district court's denial of Plaintiff's motion for leave to amend with regard to Officer Sherrill and the City of Tulsa as to the Fourth Amendment claims. We construe Plaintiff's letter of May 7, 2004, with attached exhibits as a motion to supplement the record, and the motion is DENIED. We remind Plaintiff of his obligation to make partial payments under 28 U.S.C. § 1915(b)(1) until his appellate filing fee is paid in full.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

03-5170, Starr v. Downs

**HARTZ** , Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion's disposition of the equal-protection claim, but I respectfully dissent from the affirmance of dismissal of the Fourth Amendment claim.

In the majority opinion, reasonable suspicion for the stop of Plaintiff rests on Officer Downs's knowledge that the apartment building was used for drug trafficking. The opinion notes that Plaintiff has not set forth any evidence to question that knowledge. But in a summary-judgment proceeding the nonmovant has no burden to produce evidence unless the movant's evidence, when viewed in the light most favorable to the nonmovant, establishes that there is no genuine issue of material fact. *See Combs v. Pricewaterhousecoopers* , 382 F.3d 1196, 1199 (10th Cir. 2004). Here, the majority opinion has failed to view the evidence in the light most favorable to Plaintiff.

The only evidence that Officer Downs had reasonable grounds to believe the apartment building was the scene of drug trafficking is one sentence in his affidavit. That affidavit, executed 19 months after Plaintiff's arrest, includes the assertion, "I know the apartment building located approximately at 300 South Cheyenne is used for drug trafficking." R. Doc. 30 ¶ 5. The majority opinion infers from this statement that Downs had this knowledge at the time of the arrest. Perhaps so. That would be a reasonable inference. But it would also be

reasonable to infer that Downs gained his knowledge well after Plaintiff's arrest, *as a result of* the investigation that included Downs's surveillance on the night in question, not *before* the arrest. To construe the affidavit as does the majority opinion is to invite abuse in future cases, when intentionally ambiguous affidavits may be used to deceive the court.

This is a frustrating case. I would be surprised if Officer Downs did not have the requisite reasonable suspicion to stop and handcuff Plaintiff. Careful work by his counsel would have made that clear on the record before the district court on the summary-judgment motion. The affidavit, however, does not meet that standard. And the Rules of Civil Procedure do not permit us to correct counsel's failure.

My hope is that this case is just a "derelict on the waters of the law," *Lambert v. California*, 355 U.S. 225, 232 (1957) (Frankfurter, J., dissenting), and does not presage fact finding by the court on summary-judgment motions. *See generally* Arthur R. Miller, The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Clichés Eroding our Day in Court and Jury Trial Commitments?, 78 NYU L. Rev. 982 (2003).