**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 14 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JORGE ESPARZA-MENDOZA, also
known as Adame Amalia, also known
as Jorge Espinoza,

Defendant-Appellant,

No. 03-4218

AMERICAN CIVIL LIBERTIES
UNION IMMIGRANTS' RIGHTS
PROJECT, ACLU OF UTAH;
NATIONAL ASSOCIATION OF
FEDERAL DEFENDERS;
NATIONAL ASSOCIATION OF
CRIMINAL DEFENSE LAWYERS,

Amici Curiae.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 02-CR-99-PGC)**

Benjamin A. Hamilton, Salt Lake City, Utah, for Defendant-Appellant.

Michael S. Lee, Assistant United States Attorney (Paul M. Warner, United States
Attorney, District of Utah, with him on the brief), Salt Lake City, Utah, for
Plaintiff-Appellee.

Michael S. Kwun, Keker & Van Nest, LLP, San Francisco, California, with Lucas Guttentag and Cecillia D. Wang, ACLU Immigrants' Rights Project, Oakland, California, Counsel for Amici Curiae American Civil Liberties Union Foundation Immigrants' Rights Project, ACLU of Utah, and National Association of Federal Defenders, and David M. Porter, Sacramento, California, for Amicus Curiae National Association of Criminal Defense Lawyers, on brief for Amici Curiae in support of Defendant-Appellant.

---

Before **SEYMOUR** , **BRISCOE** , and **TYMKOVICH** , Circuit Judges.

---

**TYMKOVICH** , Circuit Judge.

---

Jorge Esparza-Mendoza appeals his conviction on one count of violating 8 U.S.C. § 1326, which prohibits previously deported aliens from reentering the United States. Esparza-Mendoza has not contested that he had been previously deported following a felony conviction for possession of cocaine in 1999, that he did not have the express consent of the Attorney General to return, and that his presence in this country was thus in violation of § 1326. Esparza-Mendoza's only argument has been that the evidence used to support the charge and conviction was obtained in violation of the Fourth Amendment and should have been suppressed.

The district court heard his motion to suppress and rejected it. In an extensive memorandum opinion, the court analyzed legal, social, and political precedent from colonial times to today, and came to the conclusion that

previously deported felons cannot assert Fourth Amendment suppression claims. [1]

*See United States v. Esparza-Mendoza*, 265 F. Supp. 2d 1254, 1271 (D. Utah 2003) (ruling that previously deported alien felons do not have a "sufficient connection to this country" and therefore "stand outside 'the People' covered by the Fourth Amendment").

Esparza-Mendoza then entered a conditional guilty plea and the district court sentenced him to seventeen months imprisonment followed by thirty-six months of supervised release. Esparza-Mendoza timely appealed, and we have jurisdiction under 28 U.S.C. § 1291. We conclude that Esparza-Mendoza's encounter with police was consensual and thus did not implicate the Fourth Amendment. Therefore we affirm without having the opportunity to decide whether we agree with the district court's comprehensive analysis of who are "the people" protected by the Fourth Amendment.

## I. Background

### A. The Facts

As noted by the district court, the facts of this case are essentially undisputed. Esparza-Mendoza illegally entered the United States from Mexico around March 1997. On April 19, 1999, he was convicted in Utah state court of a

---

[1]The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."

felony cocaine possession charge. The United States Immigration and Naturalization Service ("INS") subsequently gave Esparza-Mendoza notice it was bringing a deportation action against him. Esparza-Mendoza did not contest the deportation, and on May 20, 1999, the INS ordered his deportation, warning him that reentry without permission would be a criminal offense. On May 22, 1999, he was deported to Mexico.

On October 27, 2002, Deputy Tracey Cook of the Salt Lake County Sheriff's Office responded to a call reporting an altercation between two sisters at a residence in Kearns, Utah. When she arrived at the scene, Deputy Cook encountered two women. One was standing outside the home and the other in the doorway. The two confirmed they were sisters and had been involved in a verbal dispute. One added that the other had thrown a brick at a car parked in the driveway. The woman told Deputy Cook that the car belonged to her boyfriend, but that "he didn't want anything done about it." R. Vol. II at 15. Deputy Cook told the woman she needed to speak to the boyfriend to ask about the damage and to verify that he was the owner. The woman said he was inside the residence and that she would get him.

The boyfriend came outside onto the porch to speak with Deputy Cook. He told Deputy Cook that the car was not his but belonged to a sibling. Deputy Cook testified at the suppression hearing that she then "stated I needed to get some

identification from him and run the information on the vehicle . . . ." The boyfriend responded by telling her that "he didn't want anything done about the damages to the vehicle." *Id*. at 16-17. Deputy Cook testified that she told him she found it strange that he would not want the damage investigated since the owner would probably be upset when he returned the vehicle damaged. She reiterated that she "needed" to see the boyfriend's identification, and this time he provided her with an identification card that identified him as Esparza-Mendoza. *Id*. at 16-17, 28-29.

Deputy Cook called in Esparza-Mendoza's information to a dispatch officer, who advised her that Esparza-Mendoza was a deported felon and the subject of a fugitive warrant. In order to confirm that she was indeed dealing with the person named in the warrant, Deputy Cook contacted the INS. The INS agent spoke first to Deputy Cook and then directly, extensively, and in Spanish, with Esparza-Mendoza. After the INS agent confirmed that he was the subject of the warrant, Deputy Cook arrested Esparza-Mendoza.

## B. The Case

As noted, Esparza-Mendoza does not contest the essential factual basis for his conviction. He was in the country in violation of 8 U.S.C. § 1326 . The only question before the district court was whether Esparza-Mendoza's identity and the information that the government gathered once it discovered his identity, such as

the outstanding warrant and his criminal and immigration history, should be suppressed as the fruits of an illegal search and seizure.

At the suppression hearing, the government did not attempt to argue that Deputy Cook had any reasonable suspicion of criminal activity that would justify an investigatory detention of Esparza-Mendoza under *Terry v. Ohio*, 392 U.S. 1 (1968). The government instead made three arguments against suppression. First, they maintained that the encounter between Deputy Cook and Esparza-Mendoza was consensual, meaning there was no search or seizure for purposes of the Fourth Amendment. Second, they contended that even if there was a violation of the Fourth Amendment, an individual's identity is not suppressible. Finally, at the request of the district court, the government argued that previously deported felons, as a class, are not entitled to challenge searches or seizures under the Fourth Amendment.

The district court ruled that once Esparza-Mendoza initially refused to provide his identification, Deputy Cook's "additional step of directing him to answer" made the encounter a non-consensual detainment. *Esparza-Mendoza*, 265 F. Supp. 2d at 1257. The court did not address the merits of the government's second argument because the government sought to introduce not just Esparza-Mendoza's identity but other evidence, including incriminating statements. *Id.* at 1257-58. Since this other evidence, according to the district

court, would not be excluded even under the government's proposed rule, the court felt compelled to address the third issue. Ruling that as a previously deported felon Esparza-Mendoza "lacks sufficient connection to this country to assert a Fourth Amendment suppression claim," the district court denied the motion to suppress. *Id.* at 1273.

## II. Discussion

### A. The Appeal

The parties take somewhat surprising positions on appeal. The government has elected not to defend the district court's decision that the Fourth Amendment does not apply to Esparza-Mendoza—the only issue on which the court ruled in the government's favor. Instead, the government simply says that while it is not "confessing error with respect to" that conclusion, it urges us to affirm by ruling in its favor on either of the first two issues. On the other hand, Esparza-Mendoza and the amici arguing in support of his appeal, while not ignoring the first two issues, urge us to concentrate on the issue on which he lost.

Because we agree with the government that the encounter between Esparza-Mendoza and Deputy Cook was completely voluntary, it did not constitute a search or seizure under the Fourth Amendment. Thus we need not reach the other two issues in order to affirm the district court.

### B. The Encounter

The first issue on appeal is whether Esparza-Mendoza's encounter with the officer was consensual. On this issue, we must accept the district court's factual findings unless they are clearly erroneous. *See United States v. Glass*, 128 F.3d 1398, 1405 (10th Cir. 1997); *United States v. Soto*, 988 F.2d 1548, 1551 (10th Cir. 1993). As noted above, however, the material facts of this case are undisputed. Thus, the only question is whether those facts show that the encounter was a non-consensual detainment. This is a matter of applying the law to the facts, which we analyze de novo. *Glass*, 128 F.3d at 1405; *United States v. Torres-Guevara*, 147 F.3d 1261, 1264 (10th Cir. 1998). In addition, "[w]e are free to affirm the rulings of a district court on any ground that finds support in the record." *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1248 (10th Cir. 2000) (internal quotations omitted). Because Deputy Cook's initial encounter with Esparza-Mendoza did not implicate the Fourth Amendment, we affirm the district court's denial of the motion to suppress on that ground.

Following the Supreme Court's direction, we have recognized repeatedly that "[t]he Fourth Amendment proscribes unreasonable searches and seizures; it does not proscribe voluntary cooperation." *United States v. Johnson,* 364 F.3d 1185, 1188 (10th Cir. 2004) (quoting *Florida v. Bostick*, 501 U.S. 429, 439 (1991)); *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). "An encounter is consensual if the defendant 'is free to leave at any time during the encounter.'"

*Torres-Guevara*, 147 F.3d at 1264 (quoting *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996)). Thus, "[p]olice officers may approach citizens, ask them questions and ask to see identification without implicating the Fourth Amendment's prohibition against unreasonable searches and seizures." *Johnson*, 364 F.3d at 1188-89 (citing *Bostick*, 501 U.S. at 434-35). "A person is seized only when that person has an objective reason to believe he or she is not free to end the conversation with the officer and proceed on his or her way." *Hernandez*, 93 F.3d at 1498. "If a reasonable person would feel free to terminate the encounter," the encounter does not implicate the Fourth Amendment. *United States v. Drayton*, 536 U.S. 194, 201 (2002).

The district court cited only one case in concluding that Deputy Cook detained Esparza-Mendoza, *INS v. Delgado*, 466 U.S. 210 (1984). The court's analysis of that case was that "the Supreme Court directly stated it would find a detention 'if the [questioned] person[] refuses to answer and the police take additional steps . . . to obtain an answer." *Esparza-Mendoza*, 265 F. Supp. 2d at 1257 (quoting *Delgado*, 466 U.S. at 216). The district court then ruled that a detention occurred when "Esparza-Mendoza refused to answer and the police took the additional step of directing him to answer." *Id*.

The government is correct that in doing so the district court applied an overly strict rule against any additional questioning of an individual who has

initially refused to cooperate completely. A reading of the unabridged passage

from *Delgado* shows its more limited scope:

> [P]olice questioning, by itself, is unlikely to result in a Fourth Amendment violation. While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response. Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment. But if the person refuses to answer and the police take additional steps–such as those taken in *Brown*–to obtain an answer, then the Fourth Amendment imposes some minimal level of objective justification to validate the detention or seizure.

*Delgado*, 466 U.S. at 216-17 (internal citations omitted).

*Delgado* therefore tells us two important things. First, the Supreme Court

reaffirmed the reasonable-person-in-the-totality-of-the-circumstances standard.

Second, the Court directs courts to look to *Brown v. Texas*, 443 U.S. 47 (1979),

for guidance as to what kinds of police action following a refusal to answer will

implicate the Fourth Amendment. An examination of that case shows that Deputy

Cook's "additional step" of telling Esparza-Mendoza she needed his identification

does not approach the level of coercion involved in *Brown*.

In *Brown*, when police stopped the appellant and asked him to identify

himself, he "refused to identify himself and angrily asserted that the officers had

no right to stop him . . . . [One officer] then 'frisked' appellant . . . . When

appellant continued to refuse to identify himself, he was arrested . . . . Following

-10-

the arrest, the officers searched appellant; nothing untoward was found." 443 U.S. at 49. Frisking, physically arresting, and searching the subject are additional steps of a different dimension than making a second request, or even a second demand, for identification. Thus, the district court's determination that Deputy Cook's actions implicated the Fourth Amendment simply because she continued her conversation with him after his initial refusal to identify himself was erroneous.

Other cases from the Supreme Court and this court make it clear that *Delgado* does not require or permit such a black and white analysis. No "single factor will be dispositive in every case." *Bostick*, 501 U.S. at 439. Indeed, in *Delgado* itself, the Court held that no Fourth Amendment seizures occurred where the INS questioned each employee of a factory and asked to see identification papers for any who could not credibly claim to be citizens. 466 U.S. at 212, 221; *see also Drayton*, 536 U.S. at 201 ("[The Court has] made it clear that for the most part *per se* rules are inappropriate in the Fourth Amendment context.").

We therefore turn to our own de novo review of this issue. The "proper inquiry necessitates a consideration of 'all the circumstances surrounding the encounter.'" *Drayton*, 536 U.S. at 201 (quoting *Bostick*, 501 U.S. at 439). We have held that those circumstances include (1) whether the encounter occurred in a "confined or nonpublic space," (2) if "the officers confronting the subject were

armed or uniformed," (3) the number of officers confronting the subject, (4) whether "the officers exhibited an intimidating or coercive demeanor," and (5) if the questions asked by the officer called for potentially incriminating answers. *Torres-Guevara*, 147 F.3d at 1264 (quoting *United States v. Glass*, 128 F.3d 1398, 1405 (10th Cir. 1997).

In this case, Deputy Cook encountered Esparza-Mendoza on the porch outside his girlfriend's home, and although she may have been armed and in uniform (the record is silent on this point), there was no evidence that she drew her weapon or otherwise "exhibited an intimidating or coercive demeanor." Nor were there any other officers confronting Esparza-Mendoza. Deputy Cook's desire to identify Esparza-Mendoza might have been disconcerting to a person who had committed a crime, such as stealing the car or entering the country illegally, but "the 'reasonable person' test presupposes an *innocent* person." *Bostick*, 501 U.S. at 438 (emphasis in original); *see also Michigan v. Chesternut*, 486 U.S. 567, 574 (1988) ("This 'reasonable person' standard . . . ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached."); *United States v. Williams*, 356 F.3d 1268, 1275 (10th Cir. 2004). Deputy Cook's statements would not have seemed coercive or intimidating to a reasonable innocent person. Thus, the only relevant factor that goes in Esparza-Mendoza's favor is, not surprisingly, the one

emphasized in his briefs and relied on by the district court: Deputy Cook's second statement regarding her "need" for Esparza-Mendoza's identification. As pointed out above, this is quite different than the frisking, arrest, and search discussed by the *Delgado* Court. *See* 466 U.S. at 216 (distinguishing *Brown*, 443 U.S. at 52).

This case is, rather, like *Torres-Guevara*, where officers, having already asked the subject whether she was carrying drugs and to consent to a search, repeated their questions after the subject had declined to answer. *See* 147 F.3d at 1265. As this court noted, where there was no evidence that the police "'used a commanding or threatening manner or tone of voice, displayed a weapon, or touched'" the subject, "a reasonable person in [the subject's] position would have believed that she was free to leave in lieu of responding." *Id.* (quoting *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996)). Thus, the Fourth Amendment did not apply. *Torres-Guevara*, 147 F.3d at 1265.

The distinction on which Esparza-Mendoza hopes to rely is that instead of *asking* for his identification, Deputy Cook *demanded* it. Though the fact that the request was made in a declaratory rather than interrogatory sentence may be relevant to our overall consideration, it does not so alter the totality of the circumstances to the point that a reasonable person would have felt compelled to respond. And although Esparza-Mendoza argues that he was forced to either give up his identification or "leave the family residence," *see* Aplt. Reply Br. at 7, the

-13-

record actually shows that he had a number of other options. There is no evidence that Deputy Cook would have gone into the home to pursue Esparza-Mendoza had he not come out at his girlfriend's request, arrested him had he again refused to provide identification, or stopped him from simply going back *into* the family residence. *Cf. Delgado*, 466 U.S. at 220-21 ("While persons who attempted to flee or evade the agents may eventually have been detained for questioning, respondents did not do so and were not in fact detained . . . . Respondents may only litigate what happened to them.") (internal citation omitted). We have held that valid consent has been given by individuals with fewer options than Esparza-Mendoza. *See, e.g., United States v. Abdenbi*, 361 F.3d 1282, 1286, 1291-92 (10th Cir. 2004) (holding consent valid where three officers gained entry to an apartment after awakening one roommate at 6:15 a.m., one of the officers found another roommate asleep in his bedroom, and proceeded to question him); *United States v. Manjarrez*, 348 F.3d 881, 885-86 (10th Cir. 2003) (summarizing rules for obtaining consent of drivers pulled over by police).

A reasonable person might indeed have felt compelled by simple good manners, or by an understandable but nonetheless unnecessary unease around law enforcement officers, to accede to Deputy Cook. But a reasonable person should not have felt legally compelled to do so in these circumstances. *See Delgado,* 466 U.S. at 216 ("While most citizens will respond to a police request, the fact that

people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response."); *Abdenbi*, 361 F.3d at 1291-93. Thus, Deputy Cook's encounter with Esparza-Mendoza did not become a detention or seizure until after he had consensually given her his identification and she had thereby learned that he was the subject of an outstanding warrant.

III.

Conclusion

Because Esparza-Mendoza consensually revealed his identity to Deputy Cook, that identity and the information about Esparza-Mendoza's past were obtained without a Fourth Amendment seizure. Esparza-Mendoza was only seized after Deputy Cook and the INS determined that he was the subject of a fugitive warrant. Esparza-Mendoza does not contest that Deputy Cook had adequate cause to arrest him at that point. Thus, there was no violation of the Fourth Amendment. This is sufficient to uphold the district court's denial of the motion to suppress, and we need not address the other arguments made below and on appeal. The judgment below is AFFIRMED.