**F I L E D**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**October 13, 2005**

**TENH CIRCUIT**

|  |  |
|---|---|
| STEVEN L. POLSTON; BILLIE POLSTON; CHRISTAPHER MYERS; JANICE HALL, | No. 04-8056 |
| Plaintiffs - Appellants, | |
| v. | (D. Wyoming) |
| ROGER ALLSOP, Laramie County Sheriff; DIRECTOR, Wyoming Highway Patrol and Department of Transportation, in their individual and official capacities; BEN PEECH, Patrolman, Wyoming Highway Patrol; FNU STEPHENS, Deputy, Laramie County Sheriff's Office; FNU LOPEZ, Deputy, Laramie County Sheriff's Office; LARAMIE COUNTY BOARD OF COUNTY COMMISSIONERS, | (D.C. No. 03-CV-22-D) |
| Defendants - Appellees. | |

**ORDER AND JUDGMENT**[*]

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **BRISCOE** and **HARTZ**, Circuit Judges, and **HERRERA**, District Judge.[**]

---

This case arose from an encounter between law-enforcement officers and the occupants of a private residence after an anonymous tipster had warned of illegal drug activity there. The encounter resulted in the arrest on an outstanding warrant of one visitor to the house, but no evidence of illegal activity was discovered. The residents (Plaintiffs) filed suit against the officers in both their official and individual capacities under 42 U.S.C. § 1983, alleging violations of their Fourth, Eighth, and Fourteenth Amendment rights. They also raised state-law claims of negligence and violations of Article 1, §§ 4 and 8 of the Wyoming Constitution. Defendants moved for summary judgment. The district court granted the motion except as to the Fourth Amendment claims and the state-law negligence claim against the officers in their individual capacities. After a bench trial the district court ruled against Plaintiffs on the remaining counts. Plaintiffs appealed. We have jurisdiction under 28 U.S.C. §1291, and affirm.

Plaintiffs raise three arguments on appeal. First, Plaintiff Christapher Myers contends that he was seized outside the residence in violation of his Fourth Amendment rights. Second, Plaintiffs Janice Carnes, Billie Polston, and Stephen

---

[**]The Honorable Judith C. Herrera, United States District Judge for the District of New Mexico, sitting by designation.

Polston contend that the officers twice entered their residence in violation of the Fourth Amendment. Third, Plaintiffs argue that the officers were not entitled to qualified immunity. At oral argument before this court, Plaintiffs' counsel stated that Ms. Carnes also raised a claim of unlawful seizure based on being told by Defendants to "stay put" on a sofa in the living room while they conducted a search. But Plaintiffs' brief does not refer to any seizure of Ms. Carnes. We need not address an issue not raised in the briefs on appeal. *See Elliott Indus. v. BP Am. Prod. Co.*, 407 F.3d 1091, 1116 n.21 (10th Cir. 2005). Likewise, Plaintiffs' brief on appeal makes no mention of their state-law claim, so it is abandoned. *See id.*

## I.     FACTUAL BACKGROUND

The claims at issue on appeal were tried to the district court without a jury. Many of the events were recorded. Although there was conflicting testimony on some matters, Plaintiffs have not contended that the district court's findings of historical fact were clearly erroneous. The following account is taken from those findings and uncontradicted evidence in the record.

On February 28, 2001, an anonymous call to the Laramie County Sheriff's Office reported drug trafficking at the residence of Billie and Stephen Polston. The residents of the house were Plaintiffs Stephen Polston, Billie Polston, Janice Carnes (daughter of Stephen Polston), and Christapher Myers. Also present at the

-3-

house that night (but not parties to this appeal) were Michael Polston; his wife (whose name does not appear in the record); Shane Cotton; and Mr. Cotton's girlfriend, Carmen (whose last name does not appear in the record).

Wyoming Highway Patrol Trooper Benjamin Peech, together with Sergeant Rick Lopez and Deputy Dave Stephens of the Sheriff's Office, were dispatched to investigate. As they approached the Polston residence, they encountered Christapher Myers outside the house in the garage. Sergeant Lopez and Deputy Stephens had their weapons drawn but in the "low ready" position. Dist. Ct. Findings of Fact & Conclusions of Law (Findings) at 2. After visually determining that Mr. Myers was unarmed, Sergeant Lopez holstered his weapon and Deputy Stephens slung his shotgun over his shoulder. Trooper Peech asked Mr. Myers to "hang here with these gentlemen and we'll talk to you in a bit, okay?" *Id.* at 3.

Meanwhile, Trooper Peech approached the residence, with Deputy Stephens following. Trooper Peech knocked on the back door, and Janice Carnes answered. He explained who he and Deputy Stephens were and why they were there. After stating that they wanted to talk to Billie or Steve Polston, Trooper Peech said that it was cold outside and asked, "Can we come on in?" Aplt.'s App. at 8. Ms. Carnes answered, "Okay," and let them in. *Id.*

Upon entering, the officers saw a shotgun near the kitchen door. Present in the kitchen were several teenagers, as well as Michael Polston and his wife. When Stephen Polston appeared, Trooper Peech asked him whether there was "somewhere we could talk for a couple minutes real quick," to which he responded, "Yeah, right here. . . . Shut the door, guys." *Id.* at 9.

Trooper Peech asked whether the shotgun was loaded. Mr. Polston answered that the gun was an antique and that there were no loaded weapons in the house. Trooper Peech then explained to Mr. Polston that the officers had received information that there were unlawful drugs in the residence. Mr. Polston responded that he had none, but that his daughter, who lived downstairs, had friends who came in and out. When Trooper Peech said that he had been told that there were drugs in the upstairs bedroom, Mr. Polston guaranteed that there were none in his bedroom. The officer then asked whether he could look around the house. At first Mr. Polston said that he wanted to be sure his wife had her clothes on, but then he added, "This is going to piss me off." *Id.* at 11. Trooper Peech immediately told Mr. Polston that he did not have to consent to a search, saying, "It's entirely up to you." *Id.* When Mr. Polston complained that he felt a seizure coming on, Trooper Peech responded, "We can go ahead and leave." *Id.* at 13. Mr. Polston then inquired whether his wife was dressed. She responded that she was, but before the officers could begin the search, Mr. Polston noticed that

Deputy Stephens was carrying a shotgun and complained that the officer had come in with the weapon. The officers, believing that the Polstons had revoked consent for them to be in the house, left without conducting a search but asked Shane Cotton to come with them because he appeared to be under the influence of drugs.

Outside, the officers performed field sobriety tests on Mr. Cotton while Deputy Stephens made a call to see whether there were any outstanding warrants for him. The officers learned that there was a warrant and arrested him. Meanwhile, Christapher Myers, who had been waiting outside for 10 to 15 minutes, had asked for permission to go inside, which was granted.

At some point during these events Mr. Polston had come outside. Trooper Peech told him that he suspected that Mr. Cotton had been taking drugs and suggested that the Polstons check Mr. Cotton's room for drugs. Mr. Polston expressed concern that Mr. Cotton had brought drugs into his house, and said that he did not want them there. Mr Polston agreed to let the officers return to the house and search the room where Mr. Cotton had been staying.

Trooper Peech then re-entered the house, this time with Sgt. Lopez. Trooper Peech went upstairs with Mrs. Polston and Carmen. He sat on a chair while they searched Carmen's room and handed him numerous prescription drug

bottles for him to examine; none contained illegal substances.  The officers

eventually left, and Mr. Polston apologized for being so upset.

## II.    DISCUSSION

### A.    Alleged Seizure of Myers

The Fourth Amendment to the Constitution protects against

"unreasonable . . . seizures."  U.S. Const. amend. IV.  The Fourth Amendment

does not, however, proscribe voluntary cooperation with the police.  *See United*

*States v. Esparza-Mendoza*, 386 F.3d 953, 957 (10th Cir. 2004).  Police officers

may "approach citizens, ask them questions and ask to see identification without

implicating the Fourth Amendment's prohibition against unreasonable searches

and seizures."  *Id.* at 958 (internal quotation marks omitted).  "If a reasonable

person would feel free to terminate the encounter, then he or she has not been

seized."  *United States v. Drayton*, 536 U.S. 194, 201 (2002).  Factors to be

considered in making that determination are "'the threatening presence of several

officers, the display of a weapon by an officer, some physical touching of the

person of the citizen, or the use of language or tone of voice indicating that

compliance . . . might be compelled.'"  *United States v. Williams*, 356 F.3d 1268,

1274 (10th Cir. 2004) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554

(1980)) (ellipsis in original).  The Supreme Court has emphasized that in addition

to these factors, "all the circumstances surrounding the encounter" must be

considered. *Drayton*, 536 U.S. at 201 (internal quotation marks omitted). We review the district court's findings of fact for clear error; whether those facts indicate that the encounter was consensual is a question of law that we review de novo. *See Esparza-Mendoza*, 386 F.3d at 957.

Although Mr. Myers was approached by three police officers, two of whom had their weapons drawn, the district court found that those weapons were never pointed at him and were put away as soon as the officers determined that he was unarmed. The officers never physically touched Mr. Myers, and did not use harsh language or tone of voice. The officers did not order Mr. Myers to remain outside; they asked him to do so while they talked with the residents of the house, saying, "hang here with these gentlemen and we'll talk to you in a bit, okay?" Nor did Mr. Myers object. Finally, after the officers first left the house, they raised no objection to Mr. Myers's going back inside to retrieve his coat. The district court concluded from these factors that there had been no seizure. Reviewing these facts and the totality of the circumstances de novo, we agree that the encounter was consensual and that the officers did not seize Mr. Myers.

## B. Entries into Residence

"The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. The prohibition does not apply, however, to situations in which voluntary consent has

been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (internal citations omitted). Whether voluntary consent to enter was given is a question of fact to be determined from the totality of the circumstances. *See United States v. Abdenbi*, 361 F.3d 1282, 1287 (10th Cir. 2004). We review a finding of consent for clear error. *See United States v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001) (consent to search); *United States v. Lowe*, 999 F.2d 448, 451 (10th Cir. 1993) (consent to enter). "A finding of fact is not clearly erroneous unless it is without factual support in the record, or unless the court after reviewing all the evidence is left with a definite and firm conviction that the district court erred." *United States v. Jarvison*, 409 F.3d 1221, 1224 (10th Cir. 2005) (internal quotation marks omitted).

The district court found that when the officers first approached the house and asked Ms. Carnes if they could enter, she responded, "Okay," and let them in. Findings at 3. The court then concluded that Ms. Carnes voluntarily gave consent to enter the house and that the officers' entry did not violate the Fourth Amendment. Plaintiffs do not contend that Ms. Carnes lacked sufficient authority over the premises. Nor was there any display or threat of force. Moreover, Mr. Polston told Trooper Peech that they could talk inside the house. When the

officers felt that consent to be in the Polston residence was revoked, they left promptly. We therefore affirm the district court's finding that the initial entry into the Polston residence was consensual and did not violate the Fourth Amendment.

As for the second entry, the district court found that after Mr. Cotton had been arrested, Trooper Peech suggested to Mr. Polston that Mr. Cotton might have brought drugs into his house, and that they might be located in the room in which he had stayed. Mr. Polston said that he did not want drugs in his house and told the officers that they could search the room. Trooper Peech and Sgt. Lopez therefore re-entered the house. Trooper Peech then went into the bedroom where Mr. Cotton had been and sat while Mrs. Polston and Carmen searched the bedroom and handed him prescription drug bottles to examine.

Based on this record, the district court found that Mr. Polston gave voluntary consent, free from any coercion, for the officers to re-enter the house and search the bedroom. We find no clear error in this determination; Mr. Polston went so far as to testify at trial that he gave permission to search the room. We therefore affirm the district court's ruling that the officers' second entry into the house was also consensual and did not violate the Fourth Amendment.

C.    **Qualified Immunity**

Because we have determined that there was no violation of Plaintiffs' constitutional rights, and therefore no liability under 42 U.S.C. § 1983, we need not address the issue of qualified immunity, which frees officers from personal liability for constitutional violations if the law is not clearly established. *See Andersen v. McCotter*, 205 F.3d 1214, 1217 (10th Cir. 2000).

## III. CONCLUSION

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge