**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 11, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CESAR SANTANA-GOMEZ,

Defendant-Appellant.

No. 13-6033

W.D. Oklahoma

(D.C. No. 5:12-CR-00175-M)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **MURPHY**, and **MATHESON**, Circuit Judges.

---

## I.     Introduction

Defendant-Appellant Cesar Santana-Gomez was charged in a one-count

indictment with possession with intent to distribute 500 grams or more of

methamphetamine.  He moved to suppress evidence obtained from the search of

his Chevrolet Malibu, arguing the initial traffic stop was not supported by

reasonable articulable suspicion and the subsequent encounter was not

consensual.  After the district court denied Santana-Gomez's motion, he entered

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

into a conditional guilty plea with the government. The court thereafter sentenced him to 120 months' incarceration. Santana-Gomez now appeals the district court's denial of his motion to suppress. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the district court's ruling.

## II.    Background

On July 2, 2012, Lieutenant Jason Glass was patrolling highway I-40 in Canadian County, Oklahoma when he began following a white Chevrolet Malibu with Minnesota license plates. Glass testified the vehicle caught his eye because it had a loose rear bumper. Glass entered the license plate number into his mobile computer to check the registration but the computer showed the registration was "not on file." Glass then had dispatch run the tag number but that query also returned the response of "not on file." Glass testified a tag could return as "not on file" for either valid or unlawful reasons. Accordingly, he decided to initiate a traffic stop to ascertain if there was possible violation of state law.

Glass approached the passenger side of the vehicle and made contact with the driver, Santana-Gomez, who produced a valid Minnesota driver's license, proof of insurance, a copy of a title application from the Minnesota Department of Public Safety, and a copy of an Arizona certificate of title in the name of the previous owner. At Glass's request, Santana-Gomez sat in the patrol car while Glass ran a check on the vehicle's VIN. The check on the VIN came back as "not on file." Although the documentation provided by Santana-Gomez was in order,

-2-

Glass wrote a warning for improper tag display. He returned Santana-Gomez's documents and told him he was "good to go."

Before Santana-Gomez could exit the patrol car, Glass asked him if there was anything illegal in the vehicle. Santana-Gomez replied, "no," and specifically denied carrying drugs, money, or firearms. Glass asked if he could search the vehicle and Santana-Gomez said, "Yeah, go ahead." While searching the trunk, Glass noticed after-market screws and other alterations indicating, based on his experience and training, that there was a compartment in the vehicle. He ran his drug dog around the exterior of the car and the dog alerted to the rear bumper area. A subsequent search of the entire vehicle at an off-site location led to the discovery of methamphetamine. Santana-Gomez was charged with one count of possession with the intent to distribute 500 grams or more of methamphetamine. He filed a motion to suppress the evidence seized during the search of his vehicle. After holding a hearing at which Lieutenant Glass testified, the district court denied the motion, concluding Glass had reasonable suspicion to stop Santana-Gomez's vehicle and any questioning that occurred beyond the scope of the initial stop resulted from a consensual encounter. Accordingly, the district court ruled the arrest of Santana-Gomez and the subsequent search of the Malibu were reasonable under the Fourth Amendment. Santana-Gomez entered a conditional guilty plea, preserving his right to appeal the denial of his motion to suppress. After sentencing, he brought this appeal.

**III.    Discussion**

When this court reviews a district court's denial of a motion to suppress evidence, it considers the totality of the circumstances, views the evidence in the light most favorable to the government, and accepts the district court's factual findings unless clearly erroneous. *United States v. Stephenson*, 452 F.3d 1173, 1176 (10th Cir. 2006). The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law this court reviews de novo. *Id.*

Santana-Gomez's first challenge to the district court's ruling focuses on the justification given by Lieutenant Glass for stopping his vehicle. *See United States v. Cline*, 349 F.3d 1276, 1286 (10th Cir. 2003) (stating review of the constitutionality of a traffic stop begins with determining "whether the officer's action was justified at its inception" (quotations omitted)). This court has held that "a traffic stop will be held reasonable when, under the totality of the circumstances, the officer bears a reasonable suspicion that criminal activity may be afoot." *United States v. Cortez-Galaviz*, 495 F.3d 1203, 1205-06 (10th Cir. 2007) (quotations omitted). The district court concluded the initial stop met this standard because Glass's inability to obtain information on Santana-Gomez's vehicle after running his license plate number through his mobile computer and through dispatch was an indication the vehicle could be stolen or was being used in a crime. Santana-Gomez challenges this ruling by arguing Glass pulled his vehicle over based solely on a "hunch" because even Glass acknowledged there

could be lawful and valid reasons why his tag returned as "not on file."  *Cf.*
*United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009) (stating that
unparticularized hunches about criminal activity are insufficient to justify an
investigative detention).  This court considers Lieutenant Glass's "conduct in
light of common sense and ordinary human experience, and we accord deference
to an officer's ability to distinguish between innocent and suspicious actions."
*United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2001) (quotation and
citation omitted).  Additionally, as the government correctly argues, "[a]
determination that reasonable suspicion exists . . . need not rule out the possibility
of innocent conduct."  *United States v. Arvizu*, 534 U.S. 266, 277 (2002).

Our review of the totality of the circumstances shows the stop of Santana-
Gomez's vehicle was not based solely on a hunch.  The specific facts available to
Lieutenant Glass at the time he initiated the stop, none of which are challenged by
Santana-Gomez, would cause an objectively reasonable officer to believe
Santana-Gomez was possibly operating an unregistered vehicle.  Driving an
unregistered vehicle violates Oklahoma law.  *See* Okla. Stat. tit. 47, § 1125(C)
(requiring a vehicle owned by a nonresident to be properly registered in its native
state).  Accordingly, the initial stop did not violate the Fourth Amendment.

Santana-Gomez next argues his initial detention was extended without his
consent in violation of his Fourth Amendment rights.  This court has previously
held that a *Terry* stop ends and questioning must cease "once an officer returns

-5-

the driver's license and registration." *United States v. Villa*, 589 F.3d 1334, 1339 (10th Cir. 2009). "This general rule, however, is subject to an important exception. Additional questioning unrelated to the traffic stop is permissible if the detention becomes a consensual encounter." *Id*. (quotations omitted). A detention is consensual if "a reasonable person would believe he was free to leave or disregard the officer's request for information." *Id*. (quotation omitted).

Here, the district court concluded the encounter became consensual based on the facts Glass did not raise his voice, brandish his weapon, remove his canine from the back of the patrol car, or call for another officer. Further, when Glass returned Santana-Gomez's documents he told him he was "good to go." Having reviewed the record on appeal and considered Santana-Gomez's arguments, we conclude the district court's analysis was entirely correct. This court has previously held that a reasonable motorist would feel free to leave under circumstances nearly identical to those present in this case:

> [The officer] had returned [the defendant's] license and registration and told him he was free to go. [The defendant] must have believed he was free to leave at that point because the district court found he turned to get out of the car. . . . There was no evidence that [the only officer present] used a commanding or threatening manner or tone of voice, displayed a weapon, or touched [the defendant].

*United States v. Hernandez*, 93 F.3d 1493, 1499 (10th Cir. 1996). Santana-Gomez argues the exchange had an "accusatory nature," but that argument is foreclosed by the district court's finding that Lieutenant Glass did not raise his

voice, brandish his weapon, or engage in another act that could be considered coercive.  Simply "asking questions which may elicit incriminating answers is irrelevant to a determination of whether an encounter was consensual."  *Id.*; *see also United States v. Esparza-Mendoza*, 386 F.3d 953, 959 (10th Cir. 2004) (holding "'the reasonable person test presupposes an *innocent* person'" and, thus, questioning is not necessarily coercive even if it "might have been disconcerting to a person who had committed a crime" (quoting *Florida v. Bostick*, 501 U.S. 429, 441 (1991)).  Santana-Gomez also relies on Lieutenant Glass's testimony that most people do not decline to answer additional questions after their documents have been returned.  That testimony addresses only whether an objectively reasonable person would be willing to answer a question, not whether that person would feel free to leave.  *Cf. United States v. Thompson*, 546 F.3d 1223, 1226 (10th Cir. 2008) (holding a reviewing court is guided by precedent in similar cases, not its own experience in how "reasonable people actually respond to police investigations").  Additionally, as the government correctly asserts, the fact that an objectively reasonable person may consent to answer additional questions does not suggest they feel compelled to do so.

**IV.    Conclusion**

The judgment of the district court denying Santana-Gomez's motion is **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge